**Rogelio Rangel HERNANDEZ,**
**Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 70979.**

Court of Criminal Appeals of Texas,
En Banc.

June 5, 1991.

Rehearing Overruled Sept. 18, 1991.

Teresa A. Hunter, Laredo, for appellant.

Joe Rubio, Jr., Dist. Atty., Jose Angel Moreno, Asst. Dist. Atty., Laredo, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BENAVIDES, Judge.

The appellant, Rogelio Rangel Hernandez, was convicted of Capital Murder for causing the death of Jose Gerardo "Curly" Herrera, who was then employed as a detention officer at the Webb County Jail, while appellant was incarcerated on an unrelated charge. His punishment was assessed at death. See V.T.C.A. Penal Code Secs. 19.03(a)(5) and 1.07(a)(26).[1] Appeal to this court is automatic. See Art 37.071(h),

V.A.C.C.P.; Rule 40(b)(1), Tex.R.App.Proc. After considering appellants forty-one points of error, we find no error that would require us to disturb the trial court's judgment of conviction and sentence of death.

The record reflects that appellant was one of several detainees in the Webb County Jail who, on February 3, 1986, attempted to escape from that facility. Appellant and at least two other prisoners were armed with five handguns that had been smuggled into the jail at appellant's request. Two of the guns were large caliber weapons (.38 caliber pistols). The other three handguns were .22 and .25 caliber weapons. Herrera was shot and killed when he appeared on the second floor of the jail to remove appellant for an interview with his attorney. No other jail personnel witnessed the actual shooting.

Jose de Jesus Benavides and Merced Martinez, two other detention officers who came to investigate the sound of gunfire, were each shot several times by the appellant, who was then armed with a large caliber revolver in each hand. Ruben Reyes, another detention officer, was also shot. A narrow stairwell in the jail prevented law enforcement officers from reaching the second floor and allowed appellant to control that floor for most of the night. After threatening to shoot other inmates on the second floor, appellant finally surrendered and was taken into custody.

■ In appellant's twenty-ninth point of error he asserts that the evidence is insufficient to sustain a conviction for capital murder in that a rational trier of fact could not have found beyond a reasonable doubt that appellant intentionally caused the death of Herrera. We review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt that appellant intentionally caused the death of Herrera. See *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); See *Marras v. State*, 741 S.W.2d 395 (Tex.Cr.App.1987).

---

1. This is appellant's second appeal from a conviction for this offense. His first conviction and death sentence were reversed and the cause remanded to the trial court because of improper exclusion of a prospective juror. See *Hernandez v. State*, 757 S.W.2d 744 (Tex.Cr.App.1988).

Intent may be inferred from acts, words and conduct of accused. See *Gutierrez v. State*, 672 S.W.2d 633 (Tex.App. 13 Dist. 1984) [Held, trier of facts may infer intent to kill from any facts in evidence which, to his mind, proves existence of such intent to kill. V.T.C.A. Penal Code § 19.02(a), affirmed as reformed 741 S.W.2d 444 (Tex. Cr.App.1987)] Indeed, mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs.

■ The record reflects that appellant was responsible for procuring all the weapons involved in the shooting incident. He was seen in possession of both large caliber revolvers immediately after Herrera was shot. The fatal shots were fired from a large caliber weapon; only two such weapons were delivered to inmates in the Webb County Jail prior to the incident in question and only two were discovered in the facility afterwards. The record also reflects that appellant made two oral admissions in which he acknowledged shooting the deceased in the head. There was evidence that appellant also shot another jailer, Merced Martinez, as Martinez turned to run away after discovering appellant standing over Herrera's body. There was evidence that appellant planned this escape for quite some time and was well aware that it could include bloodshed. We find that any rational trier of fact could have found, beyond a reasonable doubt, that appellant intentionally caused Herrera's death. Therefore appellant's twenty-ninth point of error is overruled.

In point of error forty appellant contends that the evidence is insufficient to support the jury's affirmative answer to the first special issue, namely, whether the conduct of appellant that caused the death of the deceased was committed deliberately and with reasonable expectation that the death of the deceased or another would result.[2]

■ The legislature has not defined the term "deliberately" and this Court has declined to do so as a matter of statutory construction. See *Farris v. State*, 819 S.W.2d 490 (Tex.Cr.App.1990). However, for the purpose of evidentiary review, we found in *Farris* that the term "deliberately" in a capital murder context is "something more than intentional, ... [but] less than premeditation, ... [representing] a conscious decision—greater than mere will—to cause the death of the victim." See *Farris*, at 497, citing *Nichols v. State*, 754 S.W.2d 185, 201 (Tex.Cr.App.1988). It is against this standard that we determine whether the evidence is sufficient to establish deliberate conduct on the part of appellant.

■ The record reflects that appellant wrote numerous letters to various relatives announcing he was about to do something which would either gain him his freedom or get him killed. He ordered large caliber weapons; apparently dissatisfied with smaller ones that were delivered earlier. He shot Herrera in the head. In an ongoing attempt to win his freedom, appellant, after shooting Herrera, attempted to kill other jailers who were trapped inside the jail's security doors. Violence that occurs after the murder may be used to support an affirmative finding on deliberateness. See *Selvage v. State*, 680 S.W.2d 17 (Tex. Cr.App.1984). Appellant's conduct could easily be viewed as deliberate conduct with the attendant and reasonable expectation that the death of Herrera would result. The evidence supports the conclusion that a rational trier of fact could have found that appellant acted deliberately in causing Herrera's death. Point of error forty is overruled.

---

**2.** Art. 37.071(b), V.A.C.C.P., provides:
On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Appellant's points of error one and eleven relate to the court's charge at the guilt phase. Appellant contends that the trial court erred in overruling his objection to the definition of intentional and denying his requested definition of intentional. In the charge of the court the trial court defined the word "intentional" as it is defined in V.T.C.A., Penal Code Sec. 6.03(a), which provides:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

After the trial court overruled this objection to the definition appellant then requested the following definition of "intentional":

> "A person acts intentionally with respect to a result of his conduct when it is his conscious objective to cause the result."

The term "intentional" was explained, in the application portion of the charge, as follows:

> Now bearing in mind the foregoing instruction, if you believe from the evidence beyond a reasonable doubt, that the defendant, ROGELIO RANGEL HERNANDEZ, on or about the 3rd day of February, A.D., 1986, in the county of Webb, and State of Texas, as alleged in count one in the indictment, did then and there intentionally or knowingly cause the death of an individual, JOSE GERARDO HERRERA, by intentionally or knowingly shooting the said JOSE GERARDO HERRERA with a firearm; and the said ROGELIO RANGEL HERNANDEZ, did then and there intentionally or knowingly cause the death of JOSE GERARDO HERRERA, while the said ROGELIO RANGEL HERNANDEZ was incarcerated in a penal institution, to wit: the Webb County Jail at Laredo, Texas, and the said JOSE GERARDO HERRERA was then and there employed in the operation of the said penal institution, you will find the defendant guilty of the offense of capital murder and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the first count of the indictment and proceed to consider the second count of the indictment.

The jury found appellant guilty of the first count; no verdict was returned on the second count.

Appellant argues that the failure of the trial court to delete the "nature of his conduct" and "engage in the conduct" language found in Penal Code § 6.03(a) "allowed the jury to find the specific intent to kill based on proof of only a general intent to engage in a course of conduct, such as pulling the trigger of a weapon, or engage in conduct of attempting to escape from jail." We reject appellant's point of error.

In support of his contention appellant relies on *Alvarado v. State*, 704 S.W.2d 36 (Tex.Cr.App.1985).[3] In *Alvarado* this court held that where a statute prohibits intentionally or knowingly causing a result, on motion of the defendant, the definition of intentionally or knowingly must be limited to causing the result. However, under the facts of this cause, appellant's reliance on *Alvarado* is misplaced because unlike in Alvarado this offense, as alleged, was not merely a "result of conduct" offense.

We find that it was not error to submit the penal code definition of intentional due to the wording of the indictment and the wording of the application portion of the charge, which tracked the language of the indictment. The indictment in this cause required a finding of a culpable mental state to both "cause the result" (the death of Herrera) *AND* "engage in the conduct" (shooting Herrera with a gun). Thus in order to secure a conviction under the charge, which tracked the indictment, the State was required to prove both intentional or knowing conduct of the accused and

---

3. Appellant also relies on *Lugo–Lugo v. State*, 650 S.W.2d 72 (Tex.Cr.App.1983) and *Kelly v. State*, 748 S.W.2d 236 (Tex.Cr.App.1988) (Where a statute prohibits intentionally or knowingly causing a result, it is error to refuse to apply the law of culpability, limited to causing the result, to the facts of the case.)

intentional or knowing result of the conduct. Therefore, the penal code definition of intentional, which included the complained of "engage in conduct" and "nature of his conduct" language, assisted the jury in its determination of guilt. Accordingly, since both a finding of a culpable mental state to engage in the conduct and a culpable mental state to cause the result were *required by the wording of the indictment* and charge, the court did not err in instructing on both. Appellant's points of error one and eleven are overruled.

In points of error thirteen and fourteen appellant contends the trial court erred by overruling his objection to the use of the culpable mental state of "knowingly" in the application paragraph of the charge and by submitting an improper definition of "knowingly" in the definitional portion of the court's charge.

The trial court submitted the definition of "knowingly" found in V.T.C.A. Penal Code § 6.03(b), which reads as follows:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

■ Appellant contends that the use of the term "knowingly" in the application paragraph "allowed the jury to convict on a lesser culpable mental state than specific intent to kill." Either "intentionally" as defined in V.T.C.A. Penal Code § 6.03(a) or "knowingly" as defined in V.T.C.A. Penal Code § 6.03(b) will satisfy the requisite culpable mental state for a conviction under V.T.C.A. Penal Code § 19.03(a)(5). Therefore the trial court's use of the term "knowingly" was not error.

Appellant next argues that the submitted definition of knowingly "allowed the jury

to find the appellant guilty of capital murder simply if he knew the nature of his course of conduct." His contention in this point of error is similar to his argument in points of error one and eleven and is without merit for the same reasons stated therein. Since both a finding of a culpable mental state to engage in the conduct and a culpable mental state to cause the result were *required by the wording of the indictment* and charge, the court did not err in instructing on both. Points of error thirteen and fourteen are overruled.

In point of error two appellant contends the trial court erred by refusing his requested limiting instruction regarding the voluntariness of appellant's oral statements admitted at the guilt phase of the trial. In point of error eight, appellant contends the trial court erred in overruling his objection to the charge because it lacked a limiting instruction regarding the voluntariness of appellant's oral statements. See Art. 38.22 § 3, V.A.C.C.P.

■ Appellant does not question the sufficiency of the evidence adduced at the *"Jackson v. Denno* hearing"[4] pertaining to the voluntariness of the confession. Rather, appellant bases his claim on the rule that once evidence is introduced during the trial raising an issue as to the voluntariness of the confession, Art. 38.22, supra, requires the trial court to instruct the jury on the matter.[5] If evidence offered before the jury does not raise the issue of voluntariness of the confession, appellant is not entitled to a jury charge on the matter. See *Wagner v. State*, 687 S.W.2d 303, 307 (Tex.Cr.App.1984). Raising an issue as to the voluntariness of a confession means that some evidence must be presented to the jury that the confession was not given voluntarily. See *Brooks v. State*, 567 S.W.2d 2 (Tex.Cr.App.1978). There was no such evidence in this case, rather the evidence demonstrated that the incriminating statements were voluntary. The subject of appellant's claim consists of various oral

---

4. See *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

5. Art. 38.22, Sec. 7, supra, states: "When the issue is raised by the evidence, the trial judge should appropriately instruct the jury, generally, on the law pertaining to such statement."

statements made while the jail personnel were trying to convince appellant to surrender and immediately after appellant was apprehended. Appellant made no written confession. The oral statements made after his surrender were made after *"Miranda* warnings"[6] were given appellant and not in response to questioning. None of the statements that appellant refers to in his brief were the result of custodial interrogation. Appellant produced no evidence that the statements were made involuntarily. Points of error two and eight are therefore overruled.

■ In points of error three and nine appellant contends that the trial court erred by refusing his requested jury instruction regarding the exculpatory portions of his oral statements and by overruling his objection to the jury charge for failing to include the instruction. Appellant's contention is founded on the voucher rule enunciated in *Palafox v. State*, 608 S.W.2d 177 (Tex.Cr.App.1979). The voucher rule required the State to disprove beyond a reasonable doubt all exculpatory assertions in a defendant's confession if the State offered the confession into evidence. However, with the enactment of Tex.R.Crim.Evid. 607, allowing the impeachment of a witness by any party, the rationale in support of the voucher rule ceased to exist. Accordingly, this court determined in cases tried after the effective date of Tex.R.Crim.Evid. 607, the State will not be bound by exculpatory statements which previously fell under the voucher rule. See *Russeau v. State*, 785 S.W.2d 387 (Tex.Cr.App.1990). The voucher rule is no longer in effect; points of error three and nine are overruled.

In point of error four appellant contends the trial court erred in refusing his requested jury instruction on mere presence. Appellant fails to point to any evidence in the record and fails to cite to any authority that would support giving an instruction on mere presence. Under the facts of this cause an instruction on mere presence was not warranted, therefore point of error four is overruled.

■ In points of error five, six, and seven appellant contends the trial court erred by refusing his requested jury charges on lesser included offenses.[7] A charge on a lesser included offense must be given if the lesser included offense is necessarily included within the proof required to establish the offense charged, and there is some evidence that, if the accused is guilty, he is guilty only of the lesser included offense. See *Thomas v. State*, 699 S.W.2d 845, 847 (Tex.Cr.App. 1985), citing *Royster v. State*, 622 S.W.2d 442 (Tex.Cr.App.1981) (opinion on rehearing); *Aguilar v. State*, 682 S.W.2d 556, 561–62 (Tex.Cr.App.1985); Art. 37.09(1) & (3), V.A.C.C.P.[8] We will analyze each requested charge with the above *Royster–Aguilar* two step test.

Appellant was charged with capital murder in count one of the indictment under V.T.C.A. Penal code Sec. 19.03(a)(5) and in count two of the indictment under V.T.C.A. Penal Code Sec. 19.03(a)(4).

Sec 19.03 provides:
(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

. . . .

(4) the person commits the murder while escaping or attempting to escape from a penal institution;

(5) the person, while incarcerated in a penal institution, murders another who is employed in the operation of the penal institution;

■ At trial the appellant merely requested a charge on the lesser included

---

6. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

7. Appellant requested jury instructions on the lesser included offenses of murder, voluntary manslaughter, and criminally negligent homicide.

8. Art. 37.09(1) & (3) V.A.C.C.P., provides: An offense is a lesser included offense if:
(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission;

offense of "murder," which did not inform the trial court which section of § 19.02 the requested charge referred to. However, in his brief, appellant points to the felony murder statute, V.T.C.A. Penal Code, Sec. 19.02(a)(3), claiming that under the evidence a felony murder charge was required.[9] Appellant was convicted of the first count of his indictment which alleged capital murder under V.T.C.A. Penal Code, Sec. 19.03(a)(5). Felony murder is not a lesser offense of the offense charged in count one. The first prong of the *Royster–Aguilar* test is not met. Under the offense charged in count one it was not necessary to prove that the appellant caused the death of Herrera in the course of the commission or attempted commission of a felony. We do not reach the question whether 19.02(a)(3) is a lesser included offense of the offense charged in count two because error, if any, in refusing to submit a charge on this ground was harmless since no verdict was returned on count two. *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985). Appellant's point of error five is overruled.

■■■ In order to establish the offense of voluntary manslaughter, the evidence must show that the murder was committed under the immediate influence of sudden passion arising from adequate cause. See *Lincecum v. State*, 736 S.W.2d 673, 679 (Tex.Cr.App.1987); V.T.C.A. Penal Code, Sec. 19.04. Since there was no evidence at trial to raise the issue or to support the proposition that appellant killed Herrera while under the influence of sudden passion arising from adequate cause, appellant was not entitled to an instruction. See *Lincecum*, supra. Accordingly the trial court did not err in refusing appellant's requested charge on the lesser included offense of voluntary manslaughter. Point of error six is therefore overruled.

Likewise, there is no evidence that if appellant was guilty, he was only guilty of criminally negligent homicide; therefore, point of error seven also fails the second prong of the test enunciated in *Thomas* and *Royster*, and is therefore overruled.

■■■ In point of error ten appellant contends the trial court erred by overruling his objection to the charge because it failed to instruct the jury that if they had a reasonable doubt that appellant made the statements attributed to him, they should find him not guilty.[10] To preserve error on appeal, an objection to the charge must be correct, not vague or ambiguous. See *Turner v. State*, 726 S.W.2d 140 (Tex.Cr.App.1987). Appellant's objection is improper because it would allow the jury to acquit appellant merely by possessing a reasonable doubt as to whether the statements attributed to appellant were made by him, without any consideration of any and all other evidence tending to connect appellant to the offense charged. The trial court sufficiently complied with appellant's request when it submitted the instruction contained in Paragraph VIII of the guilt charge.[11] Point of error ten is overruled.

---

9. At trial, appellant merely requested a jury charge on the lesser included offense of "murder". In his brief, appellant restricts his argument to the trial court's failure to charge the jury under V.T.C.A. Penal Code § 19.02(a)(3). Appellant does not contend he was entitled to a charge on murder under V.T.C.A. Penal Code § 19.02(a)(1) or § 19.02(a)(2), therefore we do not consider same.

10. Appellant made the following objection to the court's charge:

"We would also object to the charge for the reason that it does not instruct the jury and does not contain an instruction on the charge to the jury that if they have reasonable doubt as to whether the statements attributed to the defendant were in fact made by the defendant, that they should find the defendant not guilty."

11. Paragraph VIII of the guilt charge instructed the jury as follows:

"You are instructed that under our law an oral statement of the defendant, standing alone, is not sufficient to authorize a conviction for the alleged offense. So, if you find from the evidence beyond a reasonable doubt that the defendant made a statement to the commission of the offense, you cannot convict the defendant unless you find from the evidence beyond a reasonable doubt that there is other evidence before you in this case which, of itself, tends to connect the defendant with the offense committed, if any, separate and apart from the alleged statement if any, of the defendant, and if you have a reasonable doubt there is such other corroborative evidence, *or if you have such a reasonable doubt that the defendant made such a*

In point of error twelve appellant contends the trial court erred in failing to suppress the evidence seized as a result of the warrantless arrest of appellant. Appellant claims that evidence seized as a result of the search of the Webb County Jail should have been suppressed. The evidence complained of was seized during a general search of the jail conducted to secure all weapons. Evidence seized included appellant's pants and bullets found in the pockets of the pants that were discarded at the request of police before he surrendered. All the inmates were ordered to remove their clothing while surrendering. Appellant's contention is without merit. The attributes of privacy of the home are not shared with a jail. *Lanza v. New York*, 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962); 4 *LaFave Search & Seizure*, Sec. 11.04(a).[12]

Under the circumstances of this cause, we hold that the jail guards were justified in making a search of the jail to secure the premises, remove any remaining weapons, and attempt to restore order to the volatile situation. The seizure of the evidence at the Webb County Jail violated no constitutional rights of the defendant. Point of error twelve is overruled.

In point of error fifteen appellant contends the trial court erred in overruling his objection to the verdict forms as referring to capital murder count I and capital murder count II. Appellant objected because the verdict forms failed to recite the elements of the offense as charged. The verdict forms referred to the offense as charged in the indictment and were proper. There is no requirement that the forms recite the elements, nor does the appellant cite any authority for such a proposition. Appellant's assertion that the forms were confusing because the jury requested a

poster that reproduced count one and two of the indictment is at best speculative. Point of error fifteen is overruled.

In point of error sixteen appellant contends that the trial court erred in its ruling that oral statements allegedly made by appellant to various law enforcement officers and jail guards were admissible as "res gestae" of the offense or arrest. The statements that appellant refers to are oral statements he made while he was in control of the second floor of the Webb County Jail during his attempted jail break and before he was apprehended. He maintained control of the second floor for several hours, even after he shot and killed Herrera, by standing near the top of a narrow staircase and threatening to shoot anyone who attempted to climb the stairs. During this standoff, appellant shouted many incriminating statements to the law enforcement officers who were on the first floor trying to convince him to put down his weapons and surrender. In addition to threatening that he would shoot anyone who tried to climb the stairs, appellant stated that it was he who shot Herrera, that no one else had anything to do with it, and that he would take the blame. In an attempt to suppress these damaging statements appellant contends the statements were made while he was in custody, even though armed and not restrained, because he was in a jail that was surrounded by police and there was no way out. We find that the self-incriminating statements were admissible because they were not the result of custodial interrogation. Additionally they were admissible as excited utterances of the offense. Point of error sixteen is overruled.

In point of error seventeen appellant contends that the oral statements he made after being taken into custody should

---

statement, then you will acquit the defendant." (emphasis added)

12. LaFave, supra, Sec. 10.09(a), states: "A general shakedown not limited to a particular cell, will sometimes be reasonable because of events occurring in the prison. If for example, an uprising or similar situation has occurred in the prison, necessitating a general prison lockup whereby all prisoners are confined to their cells, then a shakedown may be conducted incident to the lockup. In such a situation, there will be probable cause that weapons or other contraband relating to the emergency are to be found somewhere, which should suffice to justify the general inspection. The nature of the emergency and of the prison environment does not make feasible a cell-by-cell probable cause determination."

have been suppressed. The record reflects that after appellant surrendered to police and while being led down the stairs to the first floor, police advised appellant of his rights pursuant to *Miranda v. Arizona,* supra. Appellant acknowledged that he understood these rights. While police were advising appellant of his rights and before any questions related to the offense were asked, appellant stated: "I messed up. I killed Curly. It shouldn't have happened. This time they are going to give me the needle." Appellant contends that the statements were not voluntary because they were made while he was naked, handcuffed and in the immediate company of 20 law enforcement officials. The trial court found, and we agree, that the statements were made after *Miranda* warnings were given and were not made in response to any interrogation even though made while appellant was in custody. Point of error seventeen is overruled.

In point of error eighteen appellant contends the trial court erred in admitting the testimony of Eliso Martinez, an inmate of the Texas Department of Criminal Justice, Institutional Division, because the State failed to disclose said witness and that the substance of Martinez's testimony violated due process. The State agreed to appellant's motion to disclose the names of witnesses by April 20, 1989. The State did not advise defense counsel they would call Martinez as a witness until July 16, 1989, the day after voir dire was completed. Appellant's undisputed contention is that he was denied the opportunity to question the venirepersons during voir dire as to the substance of Martinez's proposed testimony.

The record shows the State did not become aware of the availability of said witness until June 30, 1989, when an officer with the Texas Department of Criminal Justice, Institutional Division, informed the State by letter that Martinez was willing to testify concerning some potentially damaging information regarding appellant. At the time the letter was received the jury selection process had already begun. On July 16, a full two weeks later, the State

informed defense counsel that Martinez was a potential witness. The State contends the two week delay was necessary to determine whether Martinez had previously testified, the basis of his testimony, and "generally check this individual out." Martinez testified, during the punishment phase, that appellant was a member of the "prison gang" known as the "Texas Syndicate"; that to be a member the appellant had to be a cold blooded killer; that appellant had agreed to kill someone; and that appellant agreed "to deal" heroin in prison.

The State was unaware of the witness prior to the April 20 disclosure date and could not have provided his name before the order date. As to appellant's contention that the State failed to name Martinez as a potential witness until after voir dire, we find no bad faith on part of the State. The State notified defense counsel of Martinez, and the content of his testimony, soon after it had completed its investigation of Martinez and nine days before Martinez testified at trial. Although the better practice would have been to notify opposing counsel immediately that an additional witness had surfaced who conceivably could be called to testify, we find that appellant failed to show sufficient harm to establish his contention that the trial court abused its discretion by allowing Martinez to testify. Appellant was aware of the contents of Martinez's testimony well in advance of Martinez being called but he did not request a continuance or recess to allow for time to interview Martinez or further investigate the matters pertaining to Martinez's proposed testimony. Since we have found no bad faith on the part of the State under the facts presented in this case, we cannot find that the court abused its discretion in allowing Martinez to testify. See *Pinkerton v. State,* 660 S.W.2d 58, 64 (Tex.Cr.App.1983).

Appellant also argues that the substance of Martinez's testimony denied him due process. During the punishment phase of a capital murder trial evidence may be presented on any matter that the court deems relevant to answering the special issues. See Art. 37.071(a), V.A.C.C.P.

Thus the trial court has broad discretion in determining what constitutes relevant evidence for the purpose of the punishment hearing. See *Rougeau v. State*, 738 S.W.2d 651 (Tex.Cr.App.1987). However, the discretion in determining relevance does not supersede the rules of evidence regarding the manner of proof. See *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr. App.1980). Martinez's testimony was relevant and thus admissible because appellant's affiliation with this particular organization [Texas Syndicate] was characteristic of his lawless nature and rejection of rehabilitation during prior periods of incarceration. There was evidence in the form of testimony from Martinez that appellant was involved in criminal activity, and would likely remain involved in criminal activity, that flowed directly from his membership in the Texas Syndicate. See *Ybarra v. State*, 775 S.W.2d 409 (Tex.App.–Waco 1989) (opinion testimony that appellant was member of prison gang was relevant as reputation evidence during penalty phase of prosecution for carrying deadly weapon in penal institution). Martinez's testimony was relevant to answering the second special issue, whether appellant would commit criminal acts of violence that would constitute a continuing threat to society. Testimony of appellant's involvement in a prison gang that has a history of violence is certainly relevant to the second special issue. Under the facts of this case we find the trial court did not abuse its discretion in admitting the testimony, therefore point of error eighteen is overruled.

■ In point of error nineteen appellant contends the trial court erred in admitting the "atomic absorption analysis kit" because the State failed to establish the use of properly compounded chemicals. An atomic absorption test is used to determine whether one has fired a weapon by testing for gun powder residues on the person, usually the hands. In support of his contention appellant relies on *Cody v. State*, 548 S.W.2d 401 (Tex.Cr.App.1977), where this court held that it was error to admit evidence of the results of a "breathalyzer" test given to defendant where the State had failed to introduce proof of properly

compounded chemicals used in a breathalyzer test. *Cody* is distinguishable because it dealt with breathalyzer results and appellant fails to show, either in the record below or in his arguments on appeal, how it relates to atomic absorption tests. We also find that appellant's claimed constitutional violations relating to this point are without merit. Point of error nineteen is overruled.

In points of error twenty through twenty-eight appellant contends that the trial court erred in allowing the prosecution to exercise peremptory challenges against nine Hispanic members of the venire panel. Appellant contends the State struck these potential jurors solely on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The equal protection clause of the Fourteenth Amendment prohibits purposeful racial discrimination by the State in its use of peremptory strikes. *Batson v. Kentucky, supra* at 84, 106 S.Ct. at 1716. "[A] criminal defendant may object to race based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." *Powers v. Ohio*, ——— U.S. ———, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

■ The State exercised eleven peremptory strikes. Appellant complains of nine of these strikes. Of the two he does not complain about, Joyce Estelle Wentworth is non-Hispanic; the other, Armando Piaz is Hispanic. Nine of the twelve persons actually seated in the jury were Hispanic.

The proper procedure to be followed by the trial court was aptly stated in *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App.1987):

If the defendant raises an inference of purposeful discrimination through the state's use of its peremptory strikes, and the trial court determines that a prima facie case of discrimination exists, then the burden shifts to the prosecutor who must come forward with a neutral explanation for the challenges. The trial court must then determine whether despite the state's explanation, the defendant has established purposeful discrimi-

nation. The Supreme Court in *Batson, supra,* stressed that not just any explanation would do, and in fact some explanations would per se not be sufficient. By largely judging credibility of the prosecutor, content of the explanation and all other surrounding facts and circumstances, the trial judge must make a finding of fact concerning purposeful discrimination which should be given great deference by a reviewing court. (citations omitted).

*Keeton,* 724 S.W.2d 58, 65. See also *Keeton v. State,* 749 S.W.2d 861, 862 (Tex.Cr. App.1988). The standard of review on appeal is the "clearly erroneous" standard, under which the findings of the trial court will not be disturbed if they are supported by the record. *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr.App.1989) (Opinion on State's motion for rehearing).

After reviewing the explanations offered by the prosecutor for exercising peremptory strikes on the nine Hispanic venire-members we conclude that the trial court did not "clearly err" when it held appellant failed to sustain his burden of proving, by a preponderance of the evidence, that the prosecution's peremptory strikes were the product of purposeful discrimination. See *Whitsey v. State,* 796 S.W.2d 707 (Tex.Cr. App.1989), also see *Tompkins v. State,* 774 S.W.2d 195, 201–202 (Tex.Cr.App.1987). Appellant's points of error numbers twenty through twenty-eight are overruled.

In point of error thirty appellant contends that the trial court erred in overruling his Motion for New Trial. Appellant generally asserts error related to the submitted definition of "intentionally." The issue as to whether the trial court erred in not giving a limited definition of the culpable mental states was disposed of earlier in our discussion overruling points of error one and eleven. Point of error thirty is likewise overruled.

In points of error thirty-one through thirty-five appellant contends that allowing the State to use its peremptory strikes against jurors opposed to the death penalty but not excludable for cause under *Witherspoon v. United States,* 391 U.S.

510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), is a violation of appellant's due process rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section Nineteen of the Texas Constitution. In support of his contention appellant relies exclusively on *Brown v. Rice,* 693 F.Supp. 381 (W.D.N.C.1988). In *Brown,* the District Court synthesized *Witherspoon* and *Batson* to hold "that it is unconstitutional for prosecutors to use peremptory challenges consistently to exclude potential jurors who express reservations about capital punishment so as to produce a jury that is uncommonly willing to condemn a man to death." In *Brown v. Dixon,* 891 F.2d 490 (4th Cir. 1989) the Fourth Circuit, in reversing the District Court, held:

> "We have nothing but respect for the district court's willingness to safeguard the rights of criminal defendants, and particularly those facing a death sentence. We disagree, however, that the Sixth and Fourteenth Amendments contain the right it [the district court] would extend to Brown, and therefore hold that a state may use its peremptory challenges to purge a jury of veniremen not excludable for cause under *Witherspoon*".

We agree with the holding of the Fourth Circuit. Appellant has presented no argument or rationale to convince us that a restriction on the use of peremptory challenges should be imposed as he suggests. Accordingly we find that peremptory challenges may be used against jurors who express reservations about capital punishment, but not excludable under *Witherspoon,* supra, without running afoul of the Federal and State Constitutions as appellant contends. Points of error thirty-one through thirty-five are overruled.

In points of error thirty-six and thirty-seven appellant contends the trial court erred in allowing Dr. Francisco Gonzalez to testify during the punishment phase to details regarding injuries inflicted on the victims of appellant's prior unrelated offenses. Appellant further contends that

the trial court erred in admitting photographs of these prior victims into evidence.

Gonzalez testified that as a pathologist he performed autopsies on the victims in appellant's two previous murder convictions. Before Gonzalez testified, the two prior convictions had been proven using certified copies of the judgments and sentences. Neither Gonzalez nor anyone else testified to the details of the events which formed the basis of the convictions. Gonzalez's testimony was limited merely to describing the injuries appellant's two prior victims had sustained.

■ Article 37.071, V.A.C.C.P.,[13] permits the introduction of any type of evidence that the court deems relevant to the sentence. This would include a defendant's criminal record and the range and severity of his prior criminal conduct. By the same token, the defendant has great latitude in bringing to the "jury's attention whatever mitigating circumstances he may be able to show." *Paster v. State*, 701 S.W.2d 843 (Tex.Cr.App.1985), citing *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Gonzalez's testimony was admissible because it was relevant to show the severity of appellant's prior criminal acts.

■ Appellant further contends the trial court erred in admitting two photographs depicting the body of Antonia Venegas de Gonzalez, one of the aforementioned prior victims. Only two photographs of the same victim were admitted, while a third was not. The complained of photographs were introduced as part of Gonzalez's testimony as to the injuries sustained by the victims. One of the photographs that was admitted showed Antonia Venegas de Gonzalez's partially clothed and bloodstained body before it was removed from the crime scene by the medical examiner. The second photograph, of only the top portion of

the body, was taken after the body had been removed but pre-autopsy and depicts a long cut across her neck. There was nothing of a particularly gruesome nature included within the photographs. Generally, photographs are admissible if they accurately depict that which they purport to show, a verbal description of the subject matter is admissible and the probative value is not outweighed by the prejudicial effect. *Rogers v. State*, 774 S.W.2d 247 (Tex.Cr.App.1989); Rule 403, Tex.R.Crim.Evidence. We find that the trial court did not abuse its discretion by admitting the testimony of Gonzalez and the complained of photographs. Points of error thirty-six and thirty-seven are overruled.

In point of error thirty-eight appellant, citing various sections of the United States and Texas Constitutions, contends that Art. 37.071(a), V.A.C.C.P., was applied in an unconstitutional manner. Appellant's contention relates to the admission of the testimony of Eliseo Martinez as set out in point of error eighteen; the testimony of Dr. Francisco Gonzalez as set out in point of error thirty-six; and two photos as described in point of error thirty-seven. Appellant contends that unbridled discretion by the trial court in determining relevant evidence at the punishment phase will lead to derogatory evidence of other group associations. He also complains that the introduction of pen packets allows a jury to gleam the range and severity of prior criminal conduct. As we have previously pointed out in the discussion of previous points of error the testimony of Martinez and Dr. Gonzalez was relevant and admissible at the punishment phase. A significant component underlying the constitutionality of Article 37.071, is the proposition that the jury is allowed to consider all relevant information

---

**13.** Article 37.071(a), V.A.C.C.P., provides the following:

Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment. The proceeding shall be conducted in the trial court before the trial jury as soon as practicable. In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

about the accused. See Jurek, supra. Article 37.071 is not unconstitutional on the theory it confers upon the trial court standardless discretion in determining the evidence which may be presented as to any matter relative to punishment. See *Fierro v. State*, 706 S.W.2d 310, 318 (Tex.Cr.App. 1986). Reviewing the evidence in the instant case we find no constitutional infirmity in the manner Article 37.071 was applied. Point of error thirty-eight is overruled.

In points of error thirty-nine and forty-one appellant contends the trial court erred by failing to grant a mistrial for two allegedly impermissible punishment phase jury arguments by the State.

The first complained of remark states:
(Prosecutor) "Now remember deliberation does not mean that you have to be planning for weeks and weeks and months and months, it can be just a moment of thought, a moment to ponder ... He decided to move forward, and this goes along with his past acts, the past record he has. The past record that he has."

Appellant objected and the trial court sustained his objection and instructed the jury not to consider the prosecutor's remarks. Appellant fails to state why he believes the prosecutor's remarks were improper or why the remarks, if indeed improper, were not cured by the trial court's instruction to disregard. Reversible error results from improper prosecutorial argument only where argument is extreme, manifestly improper, injects new and harmful facts into case or violates a mandatory statutory provision and is thus so inflammatory that its prejudicial effect cannot reasonably be cured by judicial instruction to disregard argument. See *Logan v. State*, 698 S.W.2d 680 (Tex.Cr.App.1985). The argument must be examined in light of the entire record. *McKay v. State*, 707 S.W.2d 23, 38 (Tex.Cr.App.1985). Considering the trial courts timely instruction to disregard, the prosecutor's argument did not amount to reversible error. Point of error thirty-nine is overruled.

The second complained of remark states:
(Prosecutor): ".. And yesterday you convicted this man of capital murder, the third time he's killed somebody. Has he learned? Was he rehabilitated? Did he change his ways? Obviously, not, this is the third time he has killed somebody. Is he a future danger to society? You bet he is. He's killed not only outside of prison, but inside of prison."

Appellant does not elaborate on why he believes the above argument was outside the bounds of proper jury argument. We can only speculate that he believes the use of the word "prison" was improper and that "jail" would have been the more appropriate term. However, this slip of the tongue does not amount to reversible error. Not every improper remark made during final argument to the jury requires reversal. See *Logan v. State*, supra.; *McKay v. State*, supra. We have examined the record in this cause and find that the above remark does not constitute reversible error. Point of error forty-one is overruled.

Appellant has filled a pro se brief in this appeal. Although he is not entitled to hybrid representation, see *Stephen v. State*, 677 S.W.2d 42, 45 (Tex.Cr.App.1984), we have reviewed the brief, in the interest of justice, because the penalty of death was assessed in this case. See *Modden v. State*, 721 S.W.2d 859, 863 (Tex.Cr.App. 1986), cert. denied, 485 U.S. 1040, 108 S.Ct. 1603, 99 L.Ed.2d 917 (1988); *Purtell v. State*, 761 S.W.2d 360, 375 (Tex.Cr.App. 1988). We find the contentions therein both without merit and not preserved for appellate review. We therefore overrule the four points of error contained in appellant's pro se brief.

Finding no reversible error, we affirm the trial court's judgment.