# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00204-CR

**Rickey Rea Rowlett, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2011-599, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Rickey Rea Rowlett guilty of continuous sexual abuse of a young child, R.R., and assessed sentence of fifty years in prison. *See* Tex. Penal Code § 21.02. On appeal, appellant challenges the sufficiency of the evidence to support the verdict and contends that the trial court should have granted his motion for directed verdict on the issue of whether he committed acts over a period of at least thirty days. Appellant also asserts that he was denied a fair trial by the trial judge's failure to recuse himself when the judge "became a witness" in the case. We affirm the judgment.

## SUFFICIENCY OF THE EVIDENCE

Appellant challenges the sufficiency of the evidence to support three different findings: aggravated sexual assault, indecency with a child, and acts occurring over thirty or more

days.  We will combine our discussion of the latter issue with his contention that the trial court erred

by denying his motion for directed verdict regarding the duration of the offense.

**Relevant law**

The trial court instructed the jury to assess whether appellant had committed two

or more sexually abusive offenses against R.R. during a period lasting longer than thirty days

starting on or about October 2, 2008, and lasting through on or about July 22, 2011.  *See* Tex. Penal

Code § 21.02.  The relevant sexually abusive offenses included aggravated assault by intentionally

or knowingly causing (1) the penetration of R.R.'s female sexual organ with his male sexual organ,

(2) contact by R.R.'s female sexual organ with his male sexual organ, or (3) the penetration of R.R.'s

female sexual organ with his finger.  *See id.* § 22.021.  The relevant sexually abusive offenses also

included indecency with a child that occurred if, with the intent to arouse or gratify the sexual desire

of any person, appellant engaged in sexual contact with R.R. by (1) touching her genitals with his

hands or fingers, or (2) touching R.R.'s anus with his hands or fingers.  *See id.* § 21.11.

When reviewing the sufficiency of the evidence, we consider all of the evidence in

the light most favorable to the verdict to decide whether any rational trier of fact could find the

essential elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319

(1979).  The jury is the sole judge of the credibility and weight to be attached to the testimony of

witnesses.  *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S.

at 319).  We presume that the jury resolved any conflicting inferences in favor of the verdict and we

defer to that resolution.  *Id.*  We use the same standard of review to assess the denial of a motion for

2

directed verdict. *Havard v. State*, 800 S.W.2d 195, 199 (Tex. Crim. App. 1989); *Balfour v. State*, 993 S.W.2d 765, 768 (Tex. App.—Austin 1999, pet. ref'd).

In a prosecution for sexual assault of a child, penetration may be proven by circumstantial evidence. *See Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990). We do not expect child victims to testify as clearly as mature, capable adults. *Id.* at 134. Outcry testimony can be legally sufficient to support a conviction for aggravated sexual assault of a child. *See Rodriguez v. State*, 819 S.W.2d 871, 873-74 (Tex. Crim. App. 1991). Because there is rarely direct evidence of the accused's intent in these type of cases, the fact-finder must usually infer intent from circumstantial evidence such as the accused's words and conduct. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

The State is not required to prove that an offense was committed on the date alleged in the indictment but may prove that the offense was committed on any date prior to the return of the indictment and within the period of limitations.[1] *See Klein v. State*, 273 S.W.3d 297, 304 n.5 (Tex. Crim. App. 2008).

**Evidence**

There is no dispute concerning the general background facts of this case. R.R. was born in October 2001 to F.R., who is appellant's daughter. In July 2007, R.R. and her younger brother moved with their mother into appellant's home. By May 2008, appellant and his wife were

---

[1] The trial court instructed the jury that it could only consider actions occurring after September 1, 2007, the effective date of the continuous-sexual-assault statute. *Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet.ref'd); *see also* Tex. Penal Code § 21.02.

the children's primary caregivers because F.R. was having some personal issues. R.R. began therapy with Tara Kvanvig-Garza in July 2009 for adjustment disorder, anxiety, and sadness. After a while, R.R. stopped going to therapy, but then resumed in July 2011 when she began to feel unsafe and have nightmares. Appellant and his wife adopted R.R. in June 2010.

Evidence supporting the verdict came primarily from R.R., her therapist, a sexual-assault nurse examiner, and a New Braunfels police officer.

- R.R. testified that appellant touched her private areas—her chest and where she goes to the bathroom—with his fingers. She testified that it happened more than once, beginning when she was seven, eight, or nine—she was not sure exactly—and ending in July 2011. She said he touched her with one hand and was touching his own area—where he goes to the bathroom—inside his underwear. R.R. said that no one other than appellant touched her that way.

- Therapist Kvanvig-Garza testified that R.R. told her that appellant began touching her when she was six years old and that he did so more than once. R.R. told Kvanvig-Garza that appellant touched her vaginal area, breasts, and buttocks inside and outside her clothing. R.R. told her that appellant used his fingers to go inside her private parts and attempted penetration by putting his penis between her legs. She testified that R.R. denied that appellant engaged in oral sex, but did say that he kissed her on her forehead and sometimes on her lips.

- Nurse examiner Moira Foley examined R.R. on July 23, 2011, and testified that R.R. said her father (appellant had adopted R.R. by that point) touched her in her "girl parts"—her breasts, vagina, and buttocks. R.R. said he got into bed with her at 3:45 a.m. two days before the exam wearing only underwear, while she had on a t-shirt as a nightgown. She said he touched her with his hand, and that this had happened before.

- New Braunfels police officer Darren Rutledge interviewed appellant. (The jury watched the video of appellant's interview.) Appellant admitted having his hands in R.R.'s underwear, though he did not admit penetration with his fingers or penis. Appellant said that his hands were far enough down that he could tell that she had no pubic hair. He denied doing anything to arouse or gratify anyone sexually. He said that R.R. was pushing his hands toward her anus. Rutledge testified that Kvanvig-Garza said she had no reports that R.R. had a tendency to pull appellant's hand toward any part of her body. Rutledge said he did not

4

investigate appellant's suspicion that R.R. had been acting out with a neighbor boy or others at daycare.

Kvanvig-Garza testified that R.R. lied on occasion. She mentioned R.R. telling people at school that Kvanvig-Garza was her mother or lying about classmates. Kvanvig-Garza testified that R.R.'s stories about appellant's abuse were consistent enough that she believed they were true.

Appellant presented evidence from his wife and several friends and coworkers who testified that he had a good reputation for being law-abiding and for dealing with children.

- Appellant's wife, Linda Rowlett, testified that R.R. touched people inappropriately from the time she moved in with the Rowletts in July 2007. Rowlett said R.R. would touch Rowlett's breast inside her blouse and would put her hand on a person's thigh and slide it upward. R.R. also did this at day care. She found appellant in bed with R.R. in only his underwear, but believes appellant's statement that R.R. moved his hand inside her underwear. She said that R.R. has attempted to move Rowlett's hand up her (R.R.'s) thigh.

- Appellant's friends, Joan and Wayne Klein, both testified that R.R. engaged in inappropriate touching from the beginning of her stay with appellant. She would sit on people's laps, reach inside their shirts, and move her hand up their thigh from their knee. Joan testified that the Rowletts would correct R.R., but she would do it again. They testified that R.R.'s behavior made them so uncomfortable that they stopped socializing with appellant and his wife.

- Appellant's sister, Janet Preston, testified that R.R. acted very sensuously for a young child. R.R. sat on Preston's great-nephew's lap and acted very clingy and flirty like a much older girl.

- Lisa Drennan, a friend, testified that R.R. tried to act older than she was and was domineering and manipulative.

- Mary Ann Steele Tison, a former child protective services conservatorship worker, met R.R. while working on R.R.'s mother's parental rights termination case. She saw nothing from R.R. that gave her concerns about sexual abuse. She testified that R.R. was a wild, uninhibited child who acted provocatively for a seven-year-old. R.R. would straddle her mother, rub on her, and make provocative dance moves. Tison testified that R.R.'s behavior improved in appellant's care, though when she wanted something she would throw a fit

5

or do whatever she needed to get what she wanted. Tison said she had concerns about R.R.'s mother's behavior.

• Joseph Garcia, who served as R.R.'s attorney ad litem, testified that he saw no red flags that she was being sexually assaulted.

Appellant also introduced testimony from another sister, Bonnie Faye Morris, who said that R.R. was being coached during her testimony. She said a woman would lean forward, and R.R. would not answer; if the woman smiled, then R.R. would answer; and if the woman leaned back, R.R. would answer "no." The woman identified was Melinda Rapp, the court appointed special advocate, who testified that she did not try to tell R.R. how to answer but simply smiled at her to let her know she was there. Nick Reininger, who was the bailiff in the courtroom during that testimony, testified that he did not see any coaching, but admitted that there were a lot of people to watch in a big space.

We conclude that, while the evidence was not explicitly detailed in every aspect, there is enough evidence to permit a rational jury to find the elements of the offense beyond a reasonable doubt. Kvanvig-Garza testified that R.R. told her that appellant "used his fingers to go inside of her private parts," which R.R. testified included her chest and the parts she used to go to the bathroom. R.R. testified that appellant would touch her with one hand and would have his hand inside his underwear touching his "area." R.R. testified and told Kvanvig-Garza that the touching happened more than once beginning when she was six and running through a Thursday in July 2011. As R.R. was born on October 2, 2001, she was six years old from October 2, 2007, through October 1, 2008. Nurse Foley testified that she examined R.R. on July 23, 2011 (a Saturday), for an alleged assault that occurred two days earlier. Thus, the jury could rationally conclude that the State proved that appellant touched R.R.'s sexual organ with the intent to arouse or gratify his sexual

6

desire—indecency by contact—on more than one occasion starting by October 1, 2008, and continuing through July 21, 2011—a period of more than thirty days. This evidence proves aggravated sexual assault through appellant's penetration of R.R.'s sexual organ with his fingers, his touching of her genitals with the intent to arouse or gratify his sexual desire, and duration of more than thirty days.

Appellant's arguments about inconsistencies and unlikelihood (i.e., R.R.'s testimony that she saw his penis under covers at night) as well as occasions on which R.R. lied all pertain to her credibility—a consideration whose resolution is left almost entirely to the jury. *See Temple*, 390 S.W.3d at 360. Similarly, his arguments that CPS and the court would not have approved his adoption of R.R. in 2010 had there been any sign that he was abusing R.R. do not require reversal. The jury could have believed appellant's argument, or it could have determined that he and R.R. concealed the ongoing abuse from investigators and the court for years. Kvanvig-Garza testified that, when describing the offenses, R.R. said that she did not tell anybody about the abuse and that she did not want anybody else to be told. She also said that she did not tell appellant's wife because she did not want to make appellant fight with his wife.

We conclude that sufficient evidence supports the jury's findings on the elements challenged and that the trial court did not err by denying appellant's motion for directed verdict on the duration issue.

## FAILURE TO RECUSE

Appellant contends that the trial judge erred by failing to recuse himself when he "became a witness" due to his previous action of signing the order approving appellant's adoption

of R.R. At trial, appellant sought to introduce the order, but the trial court sustained the State's objection that his having signed the order would be a comment on the weight of the evidence. *See In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003). Appellant contends that the trial judge should have sua sponte recused himself to permit appellant to show the jury the order and get a fair trial. He argues that admission of the order would have supported his argument that the abuse could not have occurred because any abuse would have been revealed during R.R.'s previous course of therapy and the State's rigorous investigations preceding the adoption.

Appellant waived this issue by not moving to recuse the judge.[2] This case does not present grounds for automatic disqualification of the judge. *See* Tex. Const. art. V, § 11 (no judge shall sit in any case wherein the judge is interested, either of the parties is connected by affinity or consanguinity within the degree prescribed by law, or the judge was counsel); *see also* Tex. Code Crim. Proc. art. 30.01. Bias can also be ground for disqualification in a criminal case if it is of a nature and extent that it denies the defendant due process,[3] but appellant has not raised the issue in this case. The procedure for recusal of judges in Texas Rule of Civil Procedure 18a also applies in criminal cases. *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993). Failure to make a timely motion to recuse waives any appellate complaint. *See id.* (cited in *Sodeman v. State*,

---

[2] We also note that, although appellant asserts here that he was deprived of the ability to examine the judge—who he describes as a material witness—he did not list the judge as a witness, indicate at trial a desire to call him as a witness, or make or request to make a bill of exception showing what the judge's testimony would have been.

[3] *See McClenan v. State*, 661 S.W.2d 108, 109 (Tex. Crim. App. 1983), *overruled on other grounds*, *DeLeon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) ("When a recusal motion is timely filed, Rule 18a leaves a trial judge with no discretion--the trial judge must either recuse himself or refer the motion for another judge to decide.")

8

915 S.W.2d 605, 608 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd untimely filed)); *see also*

*Gill v. Texas Dep't of Crim. Justice, Institutional Div.*, 3 S.W.3d 576, 579 (Tex. App.—Houston

[1st Dist.] 1999, no pet.). Accordingly, a complete failure to file a motion to recuse waives any

appellate issue regarding mere recusal. *See also* Tex. R. App. P. 33.1.

We also note that, despite the judge's choices to exclude the order and to continue

to preside over the case, appellant presented his argument that the alleged sexual abuse was

incongruent with the adoption proceedings through testimony. The fact of the adoption and its

timing was before the jury. We do not believe that the trial judge's failure to recuse himself

sua sponte after excluding the order of adoption contributed to the verdict or harmed appellant.


## CONCLUSION

We affirm the judgment.


_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   May 8, 2014

Do Not Publish