

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0907-17

**CHRISTOPHER ERNEST BRAUGHTON, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIRST COURT OF APPEALS
## HARRIS COUNTY

**KELLER, P.J., filed a dissenting opinion in which WALKER, J., joined.**

Appellant confronted a man who had physically assaulted his father. In a heated situation that lasted mere moments, Appellant fired a single shot at the assailant, thereby killing him. I would hold that the State's evidence was not sufficient beyond a reasonable doubt to negate Appellant's claim of defense-of-third-persons. I base my conclusion partly on the State's failure to rebut a defensive presumption that appears in the deadly-force statute.

### Self-Defense and Defense of Others

The Penal Code allows a person to defend himself or a third person against the attack of

another if the actor meets certain requirements.[1]  More is required of a person who uses deadly force.[2] One situation that justifies the use of deadly force is when the actor responds to prevent the commission of a serious crime such as murder or robbery.[3]  A person is justified in using deadly force in this situation "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to prevent the other's imminent commission of" the crime in question.[4] The phrase "reasonably believes" signifies both that the actor actually believes and that the actor's actual belief is reasonable.[5]  Defense of a third person is a "defense,"[6] which the State is required to disprove beyond a reasonable doubt.[7]

### Presumption of Reasonableness

One aspect of the defense that bears discussion is the presumption it includes.  An actor's belief that deadly force was immediately necessary to prevent one of the above crimes is presumed to be reasonable if the actor:

(1) knew or had reason to believe that the person against whom the deadly force was

---

[1]  *See* TEX. PENAL CODE §§ 9.31, 9.33.

[2]  *Id.* § 9.32.

[3]  *Id.* § 9.32(a)(2)(B).  The statute lists the crimes that qualify.  *Id.*

[4]  *Id.*

[5]  *See also McGrew v. State*, 128 Tex. Crim. 238, 247 (1935) ("[T]o justify the appellant in killing the deceased under the circumstances detailed by him, it was necessary that appellant have actual belief in the existence of the danger of losing his life. The belief must be founded upon reasonable ground, viewed from the appellant's standpoint.").

[6]  TEX. PENAL CODE § 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter.")

[7]  *Id.* § 2.03(d) ("If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.").

used . . . was committing or attempting to commit [one of the above crimes],

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor [traffic offense] at the time the force was used.[8]

If there is sufficient evidence giving rise to the presumption, the jury must be instructed on it.[9] When a jury is instructed on the presumption, the jury must also be instructed that "the presumption applies unless the State proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist" and, if the State fails to make such proof, then "the jury must find that the presumed fact exists."[10] Appellant's jury was properly instructed on the presumption.

The Penal Code did not recognize and give controlling effect to defensive presumptions until 2005.[11] How a defensive presumption interacts with a sufficiency review appears to be an issue of first impression. A defensive presumption is not a mere procedural rule; by statute, it imposes substantive constraints on the jury's decision-making with respect to whether a particular offense has been proven.[12] Given that status, it is apparent that a defensive presumption would be part of

---

[8] *Id.* § 9.32(b)(1)(C), (2), (3) (bracketed material paraphrasing language in the statute).

[9] *Id.* § 2.05(b)(1).

[10] *Id.* § 2.05(b)(2)(A), (B).

[11] *See* TEX. PENAL CODE § 2.05 (2004) (describing the effect of a presumption with respect to an "element of the offense."); Acts 2005, 79th Leg., ch. 288, § 2 (adding current language in § 2.05 regarding defensive presumptions).

[12] *See* TEX. PENAL CODE § 2.05(b); *see also e.g., id.* § 9.32(b); *see also Carmell v. Texas*, 529 U.S. 513, 522, 530 (1999) (finding an *ex post facto* violation when a law "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender" which occurred when the law "changed the quantum of evidence necessary to sustain a conviction").

the hypothetically correct jury charge described by *Malik* that must be considered in assessing the sufficiency of the evidence.[13]

**Application of the Presumption in This Case**

Appellant was entitled to the benefit of the presumption of reasonableness unless the State proved beyond a reasonable doubt that at least one of the three elements did not exist. Under the evidence in this case, all three elements were established to such a degree that a rational jury could not conclude beyond a reasonable doubt that the elements do not exist.

First, the evidence established that Appellant had "reason to believe" that the complainant, Dominguez, was attempting to rob or murder Appellant's father. It is beyond dispute that Dominguez aggressively followed Appellant's father to his home and assaulted him for no apparent legitimate reason. The fact of assault was established not only by uncontroverted testimony but also by a photograph of Appellant's father and by the father's DNA on Dominguez's knuckles. It is also beyond dispute that Dominguez was a stranger to Appellant's father. One natural inference that a person might draw from these facts is that Dominguez intended to rob Appellant's father. This natural inference provided Appellant "reason to believe" that action was necessary to prevent a robbery or attempted robbery. Another possible inference is that Dominguez's road rage motivated his assault on Appellant's father. But "reason to believe" is a relatively lenient standard and it is an objective standard. Appellant does not have to narrow down which of several possible crimes is intended; he might have "reason to believe" with respect to several possible crimes. And even if

---

[13] *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("Hence, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."). *See also id.* at 240 n.6 (a rule that would not ordinarily be in the hypothetically correct jury charge would be included if it was "statutorily worded as a sufficiency standard.").

road rage were the motive for Dominguez's actions, Appellant would have reason to believe from Dominguez's aggressive behavior, the disparity in ages between Dominguez and Appellant's father, and the fact that displaying a gun and verbally warning Dominguez did not stop Dominguez from physically attacking the father, that Appellant's father's life was in danger. That would establish reason to believe that Appellant needed to act to prevent a murder or attempted murder.

Did Appellant's "reason to believe" (that he needed to act to prevent the commission of one of these crimes) disappear at some point? The Penal Code does not expressly address what it would take for a "reason to believe" to dissipate, but a provision in the provocation limitation on self-defense provides insight. Even when a defendant would otherwise be barred from asserting self-defense because he "provoked" the other person,[14] he can nevertheless assert self-defense if he "abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter" and other person "nevertheless continues or attempts to use unlawful force."[15]

Under that standard, in this analogous situation, the question would be whether Dominguez clearly communicated an intent to abandon the encounter. The only evidence that might suggest the communication of such an intent was Gina's testimony that Dominguez raised his hands and backed up. Gina also testified, however, that she did not see Dominguez physically assault Appellant's father, even though it is undisputed that he did. The fact that Gina did not see Dominguez's assault means that she did not see the entire incident. Also, her view of the encounter was from a distance,

---

[14] What it means to "provoke" someone in this context will be discussed in connection with the second element of the presumption.

[15] TEX. PENAL CODE § 9.31(b)(4)(A), (B).

at night, and through a solar screen, and she acknowledged that the faces appeared "blurry" to her. These factors would impede Gina's ability to view details that might bear on whether Dominguez's movement signified a permanent retreat or something else—like a move for a weapon. Given the rapid, fluid nature of the events, a rational jury could not conclude beyond a reasonable doubt that the movement by Dominguez that Gina testified to clearly communicated to Appellant an attempt to abandon the encounter.

Second, no rational jury could believe that Appellant or his father provoked Dominguez to assault Appellant's father. The "provocation" element of the presumption uses language similar to the general "provocation" limitation on self-defense,[16] so it should be construed consistently with it. The "provocation" limitation on self-defense applies only if three elements are met: (1) the actor did some act or used some words that provoked the attack on him, (2) such act or words were reasonably calculated to provoke the attack, and (3) the act was done or the words were used for the purpose and with the intent that the actor would have a pretext for inflicting harm upon the person provoked.[17] The evidence indisputably establishes that Appellant did not do or say anything that could be reasonably calculated to cause Dominguez to attack Appellant's father. And even assuming that Appellant's father did or said something that caused Dominguez to attack him, no rational trier of fact would believe that Appellant's father was acting as a pretext in order to inflict harm on Dominguez.

---

[16] *Compare* Tex. Penal Code § 9.31(b)(4) ("The use of force against another is not justified . . . if the actor has provoked the other's use or attempted use of unlawful force, unless . . .) *with id.* § 9.32(b)(2) ("did not provoke the person against whom force was used"). *See also Elizondo v. State*, 487 S.W.3d 185, 196 & n.12 (Tex. Crim. App. 2016) (citing § 9.31(b)(4)).

[17] *Elizondo*, *supra* at 197.

Finally, there is no evidence that Appellant or his father were otherwise engaged in any criminal activity. Consequently, a rational jury would have no basis for concluding that Appellant was engaged in criminal activity that would disqualify the use of the presumption.

Because the three elements of the presumption were established with sufficient certainty that no rational trier of fact could find beyond a reasonable doubt that those elements did not exist, the jury was required to find, in accordance with the presumption, that it was *reasonable* for Appellant to believe that deadly force was immediately necessary to prevent the imminent commission of a robbery or murder. As explained above, however, to be justified in using deadly force, Appellant must also have *actually* believed that deadly force was immediately necessary to prevent the imminent commission of a robbery or murder.

### Actual Belief

Appellant testified that he thought Dominguez was going to rob or murder his father. Even assuming that the jury could disregard that testimony, belief is like intent, and it is generally inferred from circumstances.[18] If the circumstances already show it reasonable to believe that deadly force was immediately necessary, then the natural inference is that Appellant actually believed it as well.

There was testimony that Appellant was told by his father to "go back inside" and by his mother to "put the gun down" and that Appellant responded, "No, I got a gun now." Even if that exchange is some slight evidence that Appellant did not actually believe that deadly force was immediately necessary to prevent a robbery or murder, that exchange contains too much ambiguity

---

[18] *See In re State ex rel. Weeks*, 391 S.W.3d 117, 125 n.36 (Tex. Crim. App. 2013) (quoting *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991) ("Indeed, mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs.")).

for a rational jury to reach that conclusion beyond a reasonable doubt. Appellant's parents may have thought there was no danger, or they may have sought to protect *Appellant* from a very real danger of death. Confronted with a fluid and fast-paced situation, where a failure to act might produce serious consequences for Appellant's father, it would be understandable for Appellant to disagree with any assessment by his parents that deadly force was not needed, or at least be unwilling to take the chance that that was the case. Moreover, the fact that Appellant fired only a single shot provides further support for the notion that his actions were designed only to defend his father from a perceived danger. Under these circumstances, no rational jury could conclude *beyond a reasonable doubt* that Appellant did not actually believe that deadly force against Dominguez was immediately necessary to protect Appellant's father from the imminent commission of robbery or murder.

I conclude that the evidence was legally insufficient to rebut Appellant's defense-of-third-persons defense. Consequently, I would render a judgment of acquittal. Because the Court does not, I respectfully dissent.

Filed: December 19, 2018
Publish