NUMBER 13-06-394-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


LUIS MIGUEL REYNA RODRIGUEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 93rd District Court 

of Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Vela



 A jury found appellant, Luis Miguel Rodriguez, guilty of indecency with a child by
contact. (1) The trial court sentenced him to five years' community supervision. By two
issues, appellant challenges the legal and factual sufficiency of the evidence to support his
conviction. We affirm. 

I. Factual Background 


 R.M. testified that on July 31, 2004, appellant and his brother, co-defendant Jose
Rodriguez, invited him over to their house in McAllen. He accepted, claiming the
Rodriguez brothers had told him they would be playing the popular video game "Halo" and
hanging out with several girls they had invited to come over later in the evening. Later that
afternoon, the Rodriguez brothers drove R.M. to their house on Cynthia Street. Upon
arrival at the empty house, they went to an upstairs bedroom and began playing the video
game. While playing the game, the Rodriguez brothers began questioning R.M. about
whether he had been talking badly about them. After R.M. denied this, they began pushing
him back and forth. At some point, the brothers wrestled him into a headlock and dragged
him into an adjacent room. The brothers shoved him down on the bed and forcibly
removed his pants and boxer shorts. R.M. testified that while appellant "stood lookout" in
the doorway at the top of the stairs, Jose first "messed with my penis," "jerking me," and
"trying to give me a hard-on." While R.M. lay crying, Jose touched him with his bare hand
"in an erotic way trying to give me a hard-on." Called upon to describe how, R.M. said Jose
wrapped his fingers around his penis so that they could close with the thumb, and then
jerked his penis repeatedly. While doing this, Jose asked if R.M. wasn't enjoying it
because "why wasn't [he] getting a hard-on." After a while the brothers traded places, and
appellant began to touch the victim's penis with his bare hand, grabbing and pulling on it
in a similar fashion while Jose stood watch.

 These actions stopped only when the brothers forced R.M. to put on a pair of
spandex shorts. Then, they led him downstairs to their pool and threw him in. After a
while, they pulled him out, took him upstairs, and forced him into the shower. He remained
in the shower until they pulled him out and forced him back into the bedroom where the
previous conduct had taken place.

 R.M. testified that the brothers again pulled off his clothing and took turns jerking
his penis for another five minutes, also taking turns spanking him on the buttocks with their
bare hands. He testified that after the ordeal, they told him it was "over," and gave him his
clothes back, but kept his cell phone. R.M. asked the brothers to take him home, but they
told him they needed to "pick something up" and drove R.M. to another house. Upon
arrival, the brothers asked if R.M. wanted to "get off." He declined, and the brothers
grabbed him and again forced him to enter the empty house. Once inside, the brothers
took him upstairs, took his pants off, and once again squeezed his testicles and pulled on
his penis for several more minutes. After they had finished, the brothers gave R.M. his
clothes back, but threatened to find and harm him if he left. At that point, appellant's
friends began to arrive to hold a party. R.M. stayed at the party, but did not tell anyone
what happened out of fear for his safety. After the party, R.M. locked himself into one of
the rooms until the following morning. At that time, the brothers refused to drive him home,
but finally returned his cell phone. R.M. then left, and began walking to a friend's house.

 Jose Buitron, a detective with the McAllen Police Department, investigated the
assault on R.M. Buitron testified that he learned that the assault on R.M. began at 6913
North Cynthia and continued at 309 Primrose, both of which were houses located in
McAllen. He arrested appellant at his Cynthia Street residence.

A. Appellant's Testimony 

 While acknowledging that R.M. had been to a party at the Rodriguez brothers'
Primrose property in July 2004, (2) appellant denied ever inviting R.M. over or picking him up
the day of the incident. He further asserted that on the day in question, R.M. showed up
to the party uninvited and "roached" up. (3) Additionally, appellant claimed that upon R.M.'s
arrival with his friends, appellant and his brother told R.M. and his friends to leave. In
short, appellant adamantly denied that any of the events as described by R.M. ever
occurred. Specifically, he denied that he and his brother ever forcefully removed R.M.'s
pants and boxers on any occasion, or that either brother ever pulled on R.M.'s penis and
testicles at either of their homes.

B. State's Rebuttal Witness

 Jose Oscar Rodriguez, an investigator with the McAllen Police Department,
interviewed appellant about the allegations that R.M. made against him. After appellant
waived his Miranda (4) rights, appellant told Rodriguez, "I didn't do anything." Investigator
Rodriguez testified that after appellant denied doing anything, appellant said that he:

 and his brother had been with [R.M.] at his home and that they did do some
things like they had made him put on some tight shorts, that they had made
him jump into a pool and that this had happened at their home on North
Cynthia and that they had done this to embarrass him.


Appellant told Investigator Rodriguez that this happened in the summer of 2004. 

II. Discussion


 By issues one and two, appellant challenges the legal and factual sufficiency of the
evidence to support the verdict.


A. Standard of Review

 In reviewing the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hampton v. State, 165
S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full play to the responsibility
of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319. The
trier of fact is the sole judge of the weight and credibility of the evidence. Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim.
App. 2000). Thus, when performing a legal-sufficiency review, we may not re-evaluate the
weight and credibility of the evidence and substitute our judgment for that of the fact-finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the judgment. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000). 

 When reviewing the factual sufficiency of the evidence, we view all the evidence in
a neutral light, favoring neither party. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We will set
aside the verdict only if: (1) the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and
manifestly unjust; or (2) the verdict is against the great weight and preponderance of the
evidence. Watson, 204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). We cannot conclude a conviction is "clearly wrong" or "manifestly
unjust" simply because we would have voted to acquit. Watson, 204 S.W.3d at 417. In
other words, we may not simply substitute our judgment for the fact-finder's judgment. 
Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

 To reverse for factual sufficiency, we must determine, with some objective basis in
the record, that the great weight and preponderance of the evidence contradicts the
verdict. Watson, 204 S.W.3d at 417. In examining a factual sufficiency challenge, we
defer to the fact-finder's determination of the credibility of the evidence. Swearingen v.
State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

 The testimony of a child victim alone is sufficient to support a conviction for
indecency with a child. Perez v. State, 113 S.W.3d 819, 838 (Tex. App.-Austin 2003, pet.
ref'd); see Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); Tear v. State, 74 S.W.3d
555, 560 (Tex. App.-Dallas 2002, pet. ref'd).

B. Indecency with a Child by Contact

 In this case, the application paragraph of the charge on guilt-innocence alleged, in
relevant part, that

 Now if you find from the evidence beyond a reasonable doubt that . . .
[appellant] did then and there engage in sexual contact with [R.M.], the
victim, a child younger than 17 years and not the spouse of [appellant] by
then and there touching part of the genitals of the victim, [R.M.], with intent
to arouse or gratify the sexual desire of [appellant], then you will find
[appellant] guilty of the offense of [indecency with a child by contact].


 The penal code provides, in relevant part: "A person commits an offense if, with a
child younger than 17 years and not the person's spouse, . . . the person: (1) engages in
sexual contact with the child or causes the child to engage in sexual contact . . . ." Tex.
Penal Code Ann. § 21.11(a)(1) (Vernon 2003). Sexual contact includes the following acts,
"if committed with the intent to arouse or gratify the sexual desire of any person: "(1) any
touching by a person, including touching through clothing, of the anus, breast, or any part
of the genitals of a child; or (2) any touching of any part of the body of a child, including
touching through clothing, with the anus, breast, or any part of the genitals of a person." 
Tex. Penal Code Ann. § 21.11(c)(1), (2) (Vernon 2003). Based upon the language of this
statue, "[a] person can engage in sexual contact by touching the anus, by touching the
breast, or by touching the genitals with the requisite intent. Each one of these acts
represents a different offense." Pizzo v. State, 235 S.W.3d 711, 717 (Tex. Crim. App.
2007). Thus, the offense of indecency with a child by contact "is completed when a person
commits any one of the three proscribed acts." Id. at 718.

C. Intent

 Intent is a fact question for the trier of fact, who may infer it from the acts, words,
and conduct of the accused. Manrique v. State, 994 S.W.2d 640, 649 (Tex. Crim. App.
1999); Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). As a result of
its nature, mental culpability must generally be inferred from the circumstances under
which a prohibited act or omission occurs. Hernandez, 819 S.W.2d at 810; Robles v.
State, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). The intent to arouse or gratify may be
inferred from conduct alone and there is no requirement of an oral expression of intent. 
McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); Lozano v. State, 958
S.W.2d 925, 930 (Tex. App.-El Paso 1997, no pet.); Tyler v. State, 950 S.W.2d 787, 789
(Tex. App.-Fort Worth 1997, no pet.). 

D. Analysis

 In this case, a rational jury could have found based on R.M.'s testimony, that
appellant: (1) lured R.M. to a home for the purposes of playing a video game; (2) forcibly
removed R.M.'s pants and boxer shorts; (3) touched R.M.'s penis and testicles; (4) made
R.M. put on some tight shorts and made R.M. jump into a pool; and (5) R.M. was sixteen
years old at the time of the assault; and (6) that R.M. was not appellant's spouse.

 Appellant provided contrary evidence showing: (1) R.M. arrived at the Rodriguez'
home uninvited; (2) while at the party, R.M. was "roached" up; (3) appellant denied that
either he or his brother committed the acts testified to by R.M.; and (4) appellant told
Investigator Rodriguez that he did not do anything.

 Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found the elements of indecency with a child by contact
beyond a reasonable doubt. Moreover, appellant's action of forcibly removing R.M.'s pants
and boxer shorts and touching, grabbing, and pulling the child's penis, a rational jury could
have inferred that he possessed the requisite intent to arouse or gratify appellant's sexual
desire. We conclude that the evidence was legally sufficient to support the verdict.

 Viewing the same evidence in a neutral light, we conclude the evidence was not so
weak that the jury's determination was clearly wrong and manifestly unjust, or that the
conflicting evidence presented by appellant so greatly outweighed the evidence supporting
the conviction that the jury's determinations were manifestly unjust. See Watson, 204
S.W.3d at 414-15, 417; Johnson, 23 S.W.3d at 11. The jury could have resolved in R.M.'s
favor the conflicting testimony between appellant and R.M. regarding the incident. Further,
as we have noted, a rational jury could have inferred that appellant possessed the requisite
intent to arouse or gratify appellant's sexual desire. Therefore, deferring to the jury's
determination of the weight to be given contradictory testimonial evidence, we conclude
the evidence was factually sufficient to support the conviction. Issues one and two are
overruled.




 We affirm the trial court's judgment.



 

 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this 21st day of August, 2008.
1. See Tex. Penal Code Ann. § 21.11(a)(1), (c) (Vernon 2003).
2. The site of the second molestation according to the victim.
3. Luis indicated that being "roached up" implied being drunk or intoxicated. 
4. See Miranda v. Arizona, 384 U.S. 536 (1966).