

## NUMBER 13-06-394-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

LUIS MIGUEL REYNA RODRIGUEZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                            Appellee.

### On appeal from the 93rd District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Vela**

A jury found appellant, Luis Miguel Rodriguez, guilty of indecency with a child by

contact.[1]  The trial court sentenced him to five years' community supervision.  By two

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c) (Vernon 2003).

issues, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

## I. Factual Background

R.M. testified that on July 31, 2004, appellant and his brother, co-defendant Jose Rodriguez, invited him over to their house in McAllen. He accepted, claiming the Rodriguez brothers had told him they would be playing the popular video game "Halo" and hanging out with several girls they had invited to come over later in the evening. Later that afternoon, the Rodriguez brothers drove R.M. to their house on Cynthia Street. Upon arrival at the empty house, they went to an upstairs bedroom and began playing the video game. While playing the game, the Rodriguez brothers began questioning R.M. about whether he had been talking badly about them. After R.M. denied this, they began pushing him back and forth. At some point, the brothers wrestled him into a headlock and dragged him into an adjacent room. The brothers shoved him down on the bed and forcibly removed his pants and boxer shorts. R.M. testified that while appellant "stood lookout" in the doorway at the top of the stairs, Jose first "messed with my penis," "jerking me," and "trying to give me a hard-on." While R.M. lay crying, Jose touched him with his bare hand "in an erotic way trying to give me a hard-on." Called upon to describe how, R.M. said Jose wrapped his fingers around his penis so that they could close with the thumb, and then jerked his penis repeatedly. While doing this, Jose asked if R.M. wasn't enjoying it because "why wasn't [he] getting a hard-on." After a while the brothers traded places, and appellant began to touch the victim's penis with his bare hand, grabbing and pulling on it in a similar fashion while Jose stood watch.

These actions stopped only when the brothers forced R.M. to put on a pair of spandex shorts. Then, they led him downstairs to their pool and threw him in. After a

2

while, they pulled him out, took him upstairs, and forced him into the shower. He remained in the shower until they pulled him out and forced him back into the bedroom where the previous conduct had taken place.

R.M. testified that the brothers again pulled off his clothing and took turns jerking his penis for another five minutes, also taking turns spanking him on the buttocks with their bare hands. He testified that after the ordeal, they told him it was "over," and gave him his clothes back, but kept his cell phone. R.M. asked the brothers to take him home, but they told him they needed to "pick something up" and drove R.M. to another house. Upon arrival, the brothers asked if R.M. wanted to "get off." He declined, and the brothers grabbed him and again forced him to enter the empty house. Once inside, the brothers took him upstairs, took his pants off, and once again squeezed his testicles and pulled on his penis for several more minutes. After they had finished, the brothers gave R.M. his clothes back, but threatened to find and harm him if he left. At that point, appellant's friends began to arrive to hold a party. R.M. stayed at the party, but did not tell anyone what happened out of fear for his safety. After the party, R.M. locked himself into one of the rooms until the following morning. At that time, the brothers refused to drive him home, but finally returned his cell phone. R.M. then left, and began walking to a friend's house.

Jose Buitron, a detective with the McAllen Police Department, investigated the assault on R.M. Buitron testified that he learned that the assault on R.M. began at 6913 North Cynthia and continued at 309 Primrose, both of which were houses located in McAllen. He arrested appellant at his Cynthia Street residence.

*A. Appellant's Testimony*

While acknowledging that R.M. had been to a party at the Rodriguez brothers'

3

Primrose property in July 2004,[2] appellant denied ever inviting R.M. over or picking him up the day of the incident. He further asserted that on the day in question, R.M. showed up to the party uninvited and "roached" up.[3] Additionally, appellant claimed that upon R.M.'s arrival with his friends, appellant and his brother told R.M. and his friends to leave. In short, appellant adamantly denied that any of the events as described by R.M. ever occurred. Specifically, he denied that he and his brother ever forcefully removed R.M.'s pants and boxers on any occasion, or that either brother ever pulled on R.M.'s penis and testicles at either of their homes.

*B. State's Rebuttal Witness*

Jose Oscar Rodriguez, an investigator with the McAllen Police Department, interviewed appellant about the allegations that R.M. made against him. After appellant waived his *Miranda*[4] rights, appellant told Rodriguez, "I didn't do anything." Investigator Rodriguez testified that after appellant denied doing anything, appellant said that he:

> and his brother had been with [R.M.] at his home and that they did do some things like they had made him put on some tight shorts, that they had made him jump into a pool and that this had happened at their home on North Cynthia and that they had done this to embarrass him.

Appellant told Investigator Rodriguez that this happened in the summer of 2004.

## II. Discussion

By issues one and two, appellant challenges the legal and factual sufficiency of the evidence to support the verdict.

---

[2]The site of the second molestation according to the victim.

[3]Luis indicated that being "roached up" implied being drunk or intoxicated.

[4]*See Miranda v. Arizona*, 384 U.S. 536 (1966).

*A. Standard of Review*

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

When reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We will set aside the verdict only if: (1) the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We cannot conclude a conviction is "clearly wrong" or "manifestly unjust" simply because we would have voted to acquit. *Watson*, 204 S.W.3d at 417. In

5

other words, we may not simply substitute our judgment for the fact-finder's judgment. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To reverse for factual sufficiency, we must determine, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417. In examining a factual sufficiency challenge, we defer to the fact-finder's determination of the credibility of the evidence. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

The testimony of a child victim alone is sufficient to support a conviction for indecency with a child. *Perez v. State,* 113 S.W.3d 819, 838 (Tex. App.–Austin 2003, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Tear v. State,* 74 S.W.3d 555, 560 (Tex. App.–Dallas 2002, pet. ref'd).

*B. Indecency with a Child by Contact*

In this case, the application paragraph of the charge on guilt-innocence alleged, in relevant part, that

> Now if you find from the evidence beyond a reasonable doubt that . . . [appellant] did then and there engage in sexual contact with [R.M.], the victim, a child younger than 17 years and not the spouse of [appellant] by then and there touching part of the genitals of the victim, [R.M.], with intent to arouse or gratify the sexual desire of [appellant], then you will find [appellant] guilty of the offense of [indecency with a child by contact].

The penal code provides, in relevant part: "A person commits an offense if, with a child younger than 17 years and not the person's spouse, . . . the person: (1) engages in sexual contact with the child or causes the child to engage in sexual contact . . . ." TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2003). Sexual contact includes the following acts, "if committed with the intent to arouse or gratify the sexual desire of any person: "(1) any touching by a person, including touching through clothing, of the anus, breast, or any part

of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person." TEX. PENAL CODE ANN. § 21.11(c)(1), (2) (Vernon 2003). Based upon the language of this statue, "[a] person can engage in sexual contact by touching the anus, by touching the breast, or by touching the genitals with the requisite intent. Each one of these acts represents a different offense." *Pizzo v. State*, 235 S.W.3d 711, 717 (Tex. Crim. App. 2007). Thus, the offense of indecency with a child by contact "is completed when a person commits any one of the three proscribed acts." *Id*. at 718.

*C. Intent*

Intent is a fact question for the trier of fact, who may infer it from the acts, words, and conduct of the accused. *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999); *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). As a result of its nature, mental culpability must generally be inferred from the circumstances under which a prohibited act or omission occurs. *Hernandez,* 819 S.W.2d at 810; *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). The intent to arouse or gratify may be inferred from conduct alone and there is no requirement of an oral expression of intent. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); *Lozano v. State*, 958 S.W.2d 925, 930 (Tex. App.–El Paso 1997, no pet.); *Tyler v. State*, 950 S.W.2d 787, 789 (Tex. App.–Fort Worth 1997, no pet.).

*D. Analysis*

In this case, a rational jury could have found based on R.M.'s testimony, that appellant: (1) lured R.M. to a home for the purposes of playing a video game; (2) forcibly removed R.M.'s pants and boxer shorts; (3) touched R.M.'s penis and testicles; (4) made R.M. put on some tight shorts and made R.M. jump into a pool; and (5) R.M. was sixteen

7

years old at the time of the assault; and (6) that R.M. was not appellant's spouse.

Appellant provided contrary evidence showing: (1) R.M. arrived at the Rodriguez' home uninvited; (2) while at the party, R.M. was "roached" up; (3) appellant denied that either he or his brother committed the acts testified to by R.M.; and (4) appellant told Investigator Rodriguez that he did not do anything.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of indecency with a child by contact beyond a reasonable doubt. Moreover, appellant's action of forcibly removing R.M.'s pants and boxer shorts and touching, grabbing, and pulling the child's penis, a rational jury could have inferred that he possessed the requisite intent to arouse or gratify appellant's sexual desire. We conclude that the evidence was legally sufficient to support the verdict.

Viewing the same evidence in a neutral light, we conclude the evidence was not so weak that the jury's determination was clearly wrong and manifestly unjust, or that the conflicting evidence presented by appellant so greatly outweighed the evidence supporting the conviction that the jury's determinations were manifestly unjust. *See Watson,* 204 S.W.3d at 414-15, 417; *Johnson,* 23 S.W.3d at 11. The jury could have resolved in R.M.'s favor the conflicting testimony between appellant and R.M. regarding the incident. Further, as we have noted, a rational jury could have inferred that appellant possessed the requisite intent to arouse or gratify appellant's sexual desire. Therefore, deferring to the jury's determination of the weight to be given contradictory testimonial evidence, we conclude the evidence was factually sufficient to support the conviction. Issues one and two are overruled.

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Memorandum Opinion delivered and
filed this 21st day of August, 2008.