# NO. 12-08-00267-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KENNETH DOUGLAS CAPEHART,* *APPELLANT* | § | *APPEAL FROM THE 402ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *WOOD COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Kenneth Douglas Capehart appeals his conviction for theft. In two issues, Appellant argues that the evidence is legally and factually insufficient to support his conviction. We affirm.

### BACKGROUND

Appellant was charged by indictment with theft, a third degree felony.[1] More specifically, the indictment alleged that Appellant unlawfully appropriated, by acquiring and otherwise exercising control over property, three Lufkin pump jacks and one 210 gallon storage tank, valued at $20,000 or more, but less than $100,000, from the owner without his effective consent and with the intent to deprive the owner of the property. The indictment also included an enhancement paragraph alleging that Appellant had been convicted of a felony prior to the commission of this offense.[2] Appellant pleaded "not guilty."

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(5) (Vernon Supp 2008).

[2] *See* TEX. PENAL CODE ANN. § 12.42(a)(3) (Vernon Supp. 2008). If it is shown on the trial of a third degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished for a second degree felony. ***Id.***

At trial, Jerry Caviness testified that he is the field supervisor or pumper for PO & G oil company and oversees production at a Wood County, Texas property. He stated that this property is a central facility tank battery or, in other words, a yard storage facility (the "yard"). Caviness stated that there are oil tanks, water tanks, vessels, pumping units, repair pipe, and structural pipe at the yard. He admitted there is scrap metal and equipment at the yard that has been there for years, and that, on occasion, it is overgrown with grass and weeds. In September of 2007, Caviness asked Pete Ed Moss to clean up the yard, haul off the scrap metal and junk, and keep the proceeds. He testified that he walked through the yard with Moss and pointed out what was "good" and what was scrap. Further, he told Moss that all of the scrap, except for some pipe, was located on the north side of the yard.[3] He stated that there were two storage tanks at the yard, one 210 barrel "good" tank and one 400 barrel scrap tank. Caviness stated that he specifically told Moss to take a separator along with the scrap storage tank, identified as standing up, containing large holes, and approximately twenty feet tall. However, he never gave Moss permission to take the "good" storage tank, identified as laying on its side. Although Caviness was aware that Moss was working with someone, he did not know who it was.

At one point, Caviness noticed the "good" storage tank was missing and attempted to contact Moss. Approximately two weeks later and after being away from the yard for eight days, he noticed four Lufkin 160 pump jacks were missing, three units of which were complete, working, and usable. Caviness said he did not give Appellant, Moss, or anyone else permission to take the pump jacks or the "good" storage tank from the yard. On November 10, 2007, he reported the theft of the pump jacks.

Stephen Pfeifer testified that he is the owner of an oil company and that the company's central office is in Houston, Texas. He stated that the company acquired the property in Wood County, Texas operated by PO & G. Pfeifer was aware that Caviness authorized Moss to take a separator, but was not told that Caviness was cleaning up the yard. He testified that, in November 2007, there were three pump jacks with spare parts on the Wood County property, but admitted that weeds were growing over those pump jacks. He stated that, on November 10, 2007, Caviness informed him that these three pump jacks had been taken from the yard. Although Caviness

---

[3] Appellant makes no claim that the property described in the indictment was located on the north side of the yard.

2

located the pump jacks, Pfeifer testified that key components had already been lost, taken off, or cut up for scrap.

Pete Ed Moss testified that he runs a bulldozer and works in construction. He stated that in September 2007 Caviness gave him "a bunch of junk" along a fence row. According to Moss, Caviness showed him "exactly what to get," including a large rusted tank and a separator. He took Appellant to the yard, telling Appellant that he would split the proceeds with him if he helped haul the scrap. However, Moss could not recall what he told Appellant about what they were taking from the yard. He and Appellant worked for about two thirds of a day, took the scrap they gathered to a scrap yard in Tomball, and sold it. After that day, he never went back to the yard. Moss recalled telling Appellant that Caviness gave him a large rusted tank and, because he began running a bulldozer on another job, told Appellant to talk to Caviness about the tank. He also might have told Appellant to talk to Caviness about the separator. Moss testified that he never gave Appellant permission to take three pump jacks from the yard nor did Caviness give Moss permission to take those pump jacks. Further, he could not recall if the scrap he hauled that day contained parts of pump jacks. He stated that he took the scrap Caviness gave him that was "up that fence row," which may or may not have included small parts of a pump jack.

Robert Reagan testified that Appellant asked him to help clean up the yard in Wood County. He took his truck, trailer, and tractor to the yard and stated that he and Appellant were the only ones cleaning up the yard. While there, Appellant told him what was to be hauled off and specifically told him to leave some rods and good pipes. As they were working, Reagan noticed pumping units and stated that he hauled three pump jacks from the Wood County yard to a scrap yard between Sulphur Springs and Como. Michael Edward Rogers testified that he works for PO & G as a pumper. He stated that he goes through the yard in Wood County twice a day for approximately ten minutes. Rogers stated that Moss met Caviness at the yard one morning in September 2007 and that, although he saw Moss at the yard again shortly thereafter, he did not see Moss hauling any scrap out of the yard. He said he saw Appellant at the yard twice, but did not believe that he talked to Appellant about what he was removing from the yard. Rogers saw Appellant working on a big tank, getting it ready to move. He believed that there were about three pump jacks at the yard, only one of which looked to be in good working condition, and all of which had weeds and grass growing around them. Rogers denied giving anyone permission to take

3

three pump jacks nor did he see Moss take those pump jacks.  He also denied giving Appellant permission to take the pump jacks or the "good" storage tank.

Richard Reed testified that he is the owner of Reed Scrap Yard in Hopkins County, Texas. On November 10, 2007, he bought some oilfield scrap from Appellant including pump jacks.  He identified the scrap as being the pump jacks depicted in photographs admitted by the State.  Reed also stated that Moss was not with Appellant when Appellant sold the pump jacks to him.  After the trial concluded, the jury  found Appellant guilty of theft, $20,000 or more, but less than $100,000, as charged in the indictment and assessed his punishment at twenty years of imprisonment and a $10,000 fine.[4]  This appeal followed.

## EVIDENTIARY SUFFICIENCY

In his first and second issues, Appellant argues that the evidence is legally and factually insufficient to support his conviction.  More specifically, he contends that the State's evidence fails to establish that he formed the alleged intent to deprive the owner of the property.  Instead, he argues, the evidence supports his mistake of fact regarding the items to be removed from the property.

### Standard of Review

"Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction."  *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-88, 61 L. Ed. 2d 560 (1979)).  The standard of review is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000).  The evidence is viewed in the light most favorable to the verdict.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *LaCour*, 8 S.W.3d at 671.  The conviction will be sustained "unless it is found to be irrational or unsupported by more than a 'mere modicum' of the evidence."  *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony.  *Barnes v. State*, 876 S.W.2d 316, 321

---

[4] An individual adjudged guilty of a second degree felony shall be punished by imprisonment for any term of not more than twenty years or less than two years and, in addition, a fine not to exceed $10,000.  TEX. PENAL CODE ANN. § 12.33 (Vernon 2003).

4

(Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain. ***Losada v. State***, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). If a reviewing court finds the evidence legally insufficient to support a conviction, the result is an acquittal. ***Tibbs v. Florida***, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

In conducting a factual sufficiency review of the evidence supporting the jury's verdict, we consider all of the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See **Santellan v. State***, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. ***Johnson v. State***, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also **Ortiz v. State***, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002) (verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust"); *see **Sims v. State***, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." ***Jones v. State***, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see **Clewis v. State***, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. ***Santellan***, 939 S.W.2d at 164. It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See **Watson v. State***, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See **Van Zandt v. State***, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). We cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of the conflict. *See **Watson***, 204 S.W.3d at 417.

Further, in order to evaluate factual sufficiency, we should measure elements of the offense

as defined in a hypothetically correct jury charge for the case. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). This charge accurately promulgates the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* at 280-81.

**Applicable Law**

A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2008). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). "Appropriate" means to acquire or otherwise exercise control over property other than real property. *Id.* § 31.01(4)(B) (Vernon Supp. 2008). It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense. TEX. PENAL CODE ANN. § 8.02(a) (Vernon 2003). "Kind of culpability" means "culpable mental state." *Beggs v. State*, 597 S.W.2d 375, 378 (Tex. Crim. App. 1980).

A defendant's exclusive and unexplained possession of property recently stolen permits an inference that the defendant is the one who committed the offense. *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). An accused's intent at the time of an incident must usually be inferred from circumstantial evidence rather than direct proof. *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.–Texarkana 2006, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)).

**Analysis**

In his brief, Appellant argues that the evidence supports his mistake of fact regarding what was to be removed from the Wood County property. Appellant contends that the State failed to establish that he knew the three pump jacks and the "good" storage tank were not to be removed. However, the evidence shows that Caviness told Moss to clean up the yard and specifically told him that, except for some pipe, all of the scrap metal was located on the north side of the yard. He also gave Moss permission to take the separator and the scrap storage tank, but never gave him permission to take three pump jacks or the "good" storage tank. On November 10, 2007, Caviness reported that three pump jacks, along with the "good" storage tank, were missing from the yard.

6

Pfeifer testified that he was aware that Caviness gave Moss permission to take a separator from the yard. He also stated that before this incident, three pump jacks with spare parts were at the yard. Moss testified that the scrap given to him by Caviness was along a fence row. He told Appellant that Caviness gave him a large rusted tank and to talk to Caviness about the tank and, possibly, the separator. Moss testified that he never gave Appellant permission to take three pump jacks from the yard. Further, after that day, he never returned to the yard.

Reagan stated that Appellant told him what was to be removed from the yard and recalled hauling three pump jacks from the yard. Rogers testified that he never gave Appellant permission to take three pump jacks or the "good" storage tank from the yard. Reed testified that, on November 10, 2007, he bought some oilfield scrap from Appellant that included pump jacks. He also stated that Moss was not with Appellant when the sale was conducted. Thus, the evidence shows that none of the witnesses–Caviness, Pfeifer, Moss, or Rogers–gave Appellant permission to take three pump jacks and the "good" storage tank. Further, shortly after the theft was reported, the pump jacks were located in a scrap yard after being sold by Appellant. *See Rollerson*, 227 S.W.3d at 725; *Poncio*, 185 S.W.3d at 905. Because Appellant removed the pump jacks and the "good" storage tank from the yard and sold them, we conclude that he formed the requisite intent to exercise control over the property. *See Scott*, 202 S.W.3d at 408. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the elements of theft beyond a reasonable doubt. Therefore, the evidence is legally sufficient to support Appellant's conviction.

Having determined that the evidence is legally sufficient to support the verdict, we address factual sufficiency and consider the record in its entirety. *See Johnson*, 23 S.W.3d at 11. Caviness testified that he only showed Moss what scrap was to be removed from the yard, and did not know who was working with Moss. Moss could not recall what he told Appellant regarding what was to be removed from the yard. Reagan testified that Appellant specifically told him to leave some rods and good pipes in the yard. Rogers did not believe he talked to Appellant regarding what he was taking from the yard. Contrary to the verdict, Moss's inability to recall what he told Appellant about what was to be taken from the yard may cast doubt on Appellant's belief regarding what was to be removed. However, the jury may choose to believe some testimony and disbelieve other testimony. *See Losada* 721 S.W.2d at 309. Here, the jury

7

determined the credibility of the witnesses and resolved the evidentiary inconsistencies in the State's favor, which is its prerogative as fact finder.

Having reviewed the record in its entirety, we conclude that the jury was entitled to find Appellant guilty of theft. Our review of the record as a whole, with consideration given to all of the evidence, both for and against the jury's finding, has not revealed to us any evidence that causes us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. *See Ortiz*, 93 S.W.3d at 87; *Johnson*, 23 S.W.3d at 11; *Jones*, 944 S.W.2d at 648. Consequently, the evidence is factually sufficient for the jury to find Appellant guilty of theft as alleged in the indictment. Accordingly, Appellant's first and second issues are overruled.

### DISPOSITION

The judgment of the trial court is ***affirmed***.


  **JAMES T. WORTHEN**
Chief Justice


Opinion delivered June 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)