# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00135-CR

**John Williams, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
### NO. 2008-029, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted John Williams of possession of less than one gram of a controlled substance, a state-jail felony, and assault of a public servant, a third-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115 (West Supp. 2009); Tex. Penal Code Ann. § 22.01 (West Supp. 2009). The trial court imposed a two-year suspended sentence, five years' community supervision, and a $10,000 fine on Williams for his conviction for possession of a controlled substance, and sentenced him to three years' imprisonment for his conviction for assault of a public servant. On appeal, Williams contends that: (1) the evidence is legally insufficient to support his conviction for possession of cocaine; (2) the evidence is legally insufficient to support his conviction for assault of a public servant; and (3) the trial court erred in charging the jury on the law of parties with regard to the possession charge. Because we conclude that the evidence is legally sufficient to

support both of Williams's convictions and that any error in charging the jury on the law of parties was harmless, we affirm the trial court's judgments.

## BACKGROUND

On October 14, 2007, several police officers arrived at the Luling apartment of Williams's sister, Serena, to serve a warrant for her arrest. They knocked on the front door of the apartment and identified themselves as police officers. A female child answered the door. The officers asked the child for Serena, and Serena appeared at the door. The officers informed Serena that they had a warrant for her arrest and that she needed to come out of the apartment. When she instead tried to step back into the apartment, the officers pulled her forward, and one of the officers began handcuffing her. Officer Adam Boyd testified that Serena then yelled, "My kids. My brother," and also yelled "Stassney." Boyd testified that he knew at the time of the arrest that in addition to the warrant for Serena, there was also a warrant for the arrest of Serena's brother, Williams, who Boyd knew had a girlfriend named Stassney. Based on this information and Serena's statements, Boyd and the other officers stepped into the apartment.

Upon entering the apartment, Boyd saw Williams standing in the back hallway. Boyd told Williams that there was a warrant for his arrest and that he should turn around. Williams turned around, and Boyd placed a handcuff on Williams's right wrist. Williams then said, "Hold on just a second," to which Boyd responded, "No." At that point, Williams hit Boyd with his left elbow below Boyd's right eye. In response, Boyd and two other officers took Williams to the ground. As the officers took Williams to the ground, Williams elbowed Officer Mike Mercer in the lip. Boyd warned Williams that he would use a taser to subdue him if he continued struggling, but Williams

2

continued to resist. During the ensuing struggle, Boyd used the taser on Williams three or four times. In addition, Williams elbowed Boyd in the eye, causing a black eye, and caused Boyd to taser himself in the leg. Boyd testified that he believed Williams to be under the influence of cocaine based on his apparent lack of pain when the taser was used on him and his strength against three officers.[1] Eventually, the officers were able to handcuff Williams. When they then lifted him up off the ground, they saw a white, powdery substance and some white, rock-like substances on the floor where Williams's chest had been.[2] One of the rocks was in a small bag that had a Batman emblem on it, and the other substances were loose. All of the substances found on the floor were later determined to be a total of 0.71 grams of cocaine.

After discovering the cocaine and securing the scene, the officers obtained a warrant for the search of the apartment. In searching the rear bedroom of the apartment, they discovered a bag and a pair of men's pants near each other on the floor. In the pockets of the pants, officers found a "large sum" of cash and a wallet containing Williams's driver's license. In the bag, they found another "large sum" of cash. The total amount of cash found was $1,633.[3] In a closet in the living room, officers also discovered small bags containing a white, powdery substance and white, rock-

---

[1] The record shows that officers later took Williams to the hospital, where he tested positive for cocaine.

[2] Sergeant Kirk Kuykendoll testified that when he later had contact with Williams after Williams was taken into custody, he noticed that Williams had a "white powdery substance" in the center of his bare chest.

[3] The officer who discovered the cash testified that he did not have separate totals because he combined the cash before counting it.

like substances. At least one of the bags had a Batman emblem on it. The substances in the bags were later determined to be a combined total of 3.01 grams of cocaine.

Williams was indicted for possessing a controlled substance in an amount between one and four grams and for causing bodily injury to a public servant. At trial, the court charged the jury on the offenses alleged in the indictment as well as the lesser-included offenses of possession of a controlled substance in an amount less than one gram and resisting arrest, respectively. The jury found Williams guilty of the lesser-included offense of possession of less than one gram of cocaine and of the offense of causing bodily injury to a public servant. The trial court imposed a two-year suspended sentence, five years' community supervision, and a $10,000 fine on Williams for his conviction for possession of cocaine, and sentenced him to three years' imprisonment for his conviction for assault of a public servant. This appeal followed.

## DISCUSSION

Williams raises three issues on appeal, asserting that: (1) the evidence is legally insufficient to support his conviction for possession of cocaine; (2) the evidence is legally insufficient to support his conviction for assault of a public servant; and (3) the trial court erred in charging the jury on the law of parties with regard to the possession charge. We address each issue below.

### Legal Sufficiency

In determining the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Swearingen v. State*,

4

101 S.W.3d 89, 95 (Tex. Crim. App. 2003).  When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the verdict.  *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).

### A.    Possession of Cocaine

In his first issue, Williams challenges the legal sufficiency of the evidence to support his conviction for possession of cocaine.  To prove unlawful possession of a controlled substance, the State must establish that the defendant:  (1) exercised control, management, or care over the substance; and (2) knew the substance was contraband.  *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  Where, as here, the accused is not in exclusive possession of the place where the substance is found, his control over and knowledge of the contraband cannot be established unless there are additional independent facts and circumstances that link him to the contraband.  *See id*. at 406.  The purpose of linking the accused to the contraband is to protect innocent bystanders from conviction based solely on their proximity to the contraband.  *See id*.

There are several factors by which a defendant may, under the unique circumstances of each case, be sufficiently linked to the contraband, including:  (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present;

5

(11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd). It is not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial. *Id*. at 501. The force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt. *Id*.

Here, the jury convicted Williams of the lesser-included offense of possession of less than one gram of cocaine. Thus, the jury found Williams guilty of possessing only the 0.71 grams of cocaine found on the floor where he had been struggling with officers, not the 3.01 grams of cocaine found in the closet. The State established several links between Williams and the cocaine found on the floor. To begin with, the State established the first two links—whether the defendant was present at the scene and whether the contraband was in plain view—because Williams was at the apartment when the cocaine was found, and the cocaine was in plain view on the floor when the officers picked Williams up from the floor. The State established the third link—the defendant's proximity to the contraband—because the record shows that Williams's chest had been directly over the cocaine, so much so that he had a white, powdery substance on his bare chest after he was picked up from the floor. The fourth link—whether the defendant was under the influence of contraband when arrested—was also established because officers testified that based on their knowledge and experience, his strength and apparent imperviousness to pain suggested that he was under the influence of cocaine, and he tested positive for cocaine when he was taken to a hospital after his arrest.

6

The State established the eighth link—whether the defendant made furtive gestures—because the record shows that when officers took Williams to the ground in an attempt to handcuff him, he repeatedly tried to keep his arms tucked underneath him toward his waistband. Every time officers tried to pull one of his arms out from underneath him, he tucked it back under. The jury could have rationally concluded that such movements, combined with the fact that cocaine was then discovered on the floor where Williams's chest had been, showed that Williams was attempting to dispose of the cocaine before his arrest. The tenth link—whether other contraband or drug paraphernalia were present—was established because the record shows that more cocaine, some of which was in a small bag with the same Batman emblem as the bag found underneath Williams, was discovered in a living-room closet.

The State also established the thirteenth link—whether the defendant was found with a large amount of cash—because an officer testified that he found a "large amount" of cash in a bag in a bedroom and another "large amount of cash" in the pocket of a nearby pair of men's pants that also contained a wallet holding Williams's driver's license. The total amount of cash found was $1,633. The jury could have rationally concluded that the pants and the bag belonged to Williams. Finally, the fourteenth link—whether the conduct of the defendant indicated a consciousness of guilt—was established because the record shows that Williams resisted arrest to such a degree that he caused pain and injury to two police officers and that cocaine was subsequently discovered on the floor beneath him. Like the link regarding furtive gestures, Williams's struggle to resist arrest and the existence of the cocaine below him could lead the jury to rationally conclude that Williams knew he possessed the cocaine and was resisting arrest in an attempt to dispose of the cocaine before he was handcuffed.

7

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support Williams's conviction for possession of less than one gram of cocaine. *See Swearingen*, 101 S.W.3d at 95; *Figueroa*, 250 S.W.3d at 500-01. Given the logical force of the evidence supporting the nine links between Williams and the cocaine, a trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Swearingen*, 101 S.W.3d at 95. Accordingly, we overrule Williams's first issue.

### B. Assault of Public Servant

In his second issue, Williams challenges the legal sufficiency of the evidence to support his conviction for assault of a public servant. To prove the offense of assault of a public servant, the State must prove that: (1) the defendant intentionally, knowingly, or recklessly caused bodily injury to a public servant; (2) the defendant knew the other person was a public servant; and (3) the public servant was lawfully discharging his official duties at the time of the assault. *See* Tex. Penal Code Ann. § 22.01(a), (b)(1); *see also Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *See* Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2009).

In the indictment, the State alleged that Williams caused bodily injury to Mike Mercer, one of the police officers who struggled with Williams while trying to take him into custody. Officer Mercer testified as follows about the incident:

Prosecutor: Okay. Now, during the struggle, did the defendant make any contact with you?

Mercer: Yes.

Prosecutor: And what was that contact? Could you describe that to the jury?

Mercer: When we were going to the ground, I was hit in my lower right lip by [Williams's] elbow, and my lip began to swell, causing pain. There was no cut on the lip. It was just swelling.

Prosecutor: Did it cause you pain the next day as well?

Mercer: Yes.

Prosecutor: For how long did it cause you pain, the injury?

Mercer: A couple of hours. Not too long.

Williams challenges the legal sufficiency of the evidence to support only the first element of assault of a public servant: that he intentionally, knowingly, or recklessly caused bodily injury to Mercer. In doing so, however, Williams argues only that the evidence was legally insufficient to show that he *intentionally* or *knowingly* caused bodily injury to Mercer and does not address the sufficiency of the evidence showing that he *recklessly* caused bodily injury to Mercer. The State contends that the evidence need only be sufficient to show that Williams recklessly caused bodily injury to Mercer and that the evidence is legally sufficient in that regard. We agree.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. Tex. Penal Code Ann. § 6.03(c) (West 2003). "[A]t the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct." *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007) (quoting *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)). "Recklessness requires the defendant to actually foresee the risk involved and to consciously decide to ignore it." *Id.* Culpable mental

9

state is generally proven by circumstantial evidence. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Lopez v. State*, 630 S.W.2d 936, 942 (Tex. Crim. App. 1982); *Pitonyak v. State*, 253 S.W.3d 834, 844 (Tex. App.—Austin 2008, pet. ref'd). To determine culpability for an offense, a jury is entitled to consider events occurring before, during, and after the commission of the offense. *See Pitonyak*, 253 S.W.3d at 844.

Here, the record shows that Officer Boyd told Williams that there was a warrant for his arrest and asked him to turn around. Williams initially cooperated with Boyd, turning around and allowing Boyd to begin handcuffing his right wrist. However, when Boyd refused Williams's request to "[h]old on just a second," Williams began to resist. He hit Boyd with his left elbow below Boyd's right eye, and then as officers took him to the ground, he elbowed Officer Mercer in the lip. Even after Boyd warned Williams that he would use a taser to subdue him if he continued struggling, Williams did not stop resisting arrest. During the continuing struggle, Williams elbowed Boyd in the eye, causing a black eye, and caused Boyd to taser himself in the leg.

Considering the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to establish that Williams recklessly caused bodily injury to Mercer. *See Swearingen*, 101 S.W.3d at 95. The events that occurred before, during, and after Williams elbowed Mercer in the lip—including Williams's initial compliance with Boyd's commands and his subsequent decision to begin resisting arrest to such a degree that he elbowed both Boyd and Mercer on the face and caused Boyd to taser himself—could have led a rational juror to conclude that Williams was aware of but consciously disregarded a substantial and unjustifiable risk that his conduct would result in harm to Mercer. *See id.* We therefore overrule Williams's second issue.

10

*Jury Instruction on Law of Parties*

In his third issue, Williams contends that the trial court erred in submitting a jury instruction on the law of parties regarding his possession charge because the instruction was not supported by the evidence.[4] Generally, a trial court may give the jury an instruction on the law of parties whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties. *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). However, if the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless. *Id*. at 564-65. Thus, even if we assume that the trial court erred in submitting the instruction, the error is harmless as long the evidence in the record is legally and factually sufficient to support Williams's guilt as a principal actor.

Because we have already determined that the evidence is legally sufficient to support Williams's conviction as a principal actor, we turn now to an analysis of the factual sufficiency of the evidence. In reviewing factual sufficiency, we must weigh all the evidence in a neutral light and set the finding aside only if the evidence is so weak that the verdict seems clearly wrong or manifestly unjust, or the verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We must be appropriately deferential to the jury's verdict in order to avoid substituting our own judgment for that of the factfinder. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The jury is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Id*.

---

[4] The jury charge included an instruction on the law of parties and allowed the jury to convict Williams if the jury found beyond a reasonable doubt that Williams, "acting alone or as a party," intentionally or knowingly possessed less than one gram of cocaine.

11

Viewing the evidence in a neutral light, we note that the State did not establish every possible link between Williams and the cocaine found on the floor of Serena's apartment. *See Figueroa*, 250 S.W.3d at 500 (setting forth fourteen factors that could link defendant with contraband). For example, there is no evidence showing that Williams made incriminating statements, attempted to flee, or possessed any other contraband or narcotics at the time of his arrest. *See id*. There is also no evidence showing that there was an odor of contraband in the apartment or that Williams owned or lived in the apartment. *See id*.

However, as we have already mentioned in our legal-sufficiency analysis, the State established several other links between Williams and the cocaine. Specifically, Williams was present when the cocaine was found; the cocaine was in plain view when the officers picked Williams up from the floor; Williams's chest had been directly over and touching the cocaine, which left a white, powdery residue on his bare chest after he was lifted up; officers testified they believed Williams's strength and apparent lack of pain during the struggle demonstrated that he was under the influence of cocaine; he tested positive for cocaine when he was taken to a hospital after his arrest; he was face down and trying to keep his arms tucked underneath him toward his waistband during the struggle; more cocaine was discovered in a living-room closet, and some of the cocaine was in a small bag with the same Batman emblem as the bag found underneath Williams; a "large amount" of cash totaling $1,633 was found in a bag and in the pocket of a nearby pair of men's pants that also contained a wallet holding Williams's driver's license; and Williams resisted arrest to such a degree that he caused pain and injury to two police officers just before cocaine was discovered on the floor beneath him. Given the considerable evidence linking Williams to the cocaine, we

12

conclude that the evidence is factually sufficient to support Williams's guilt as a principal actor. *See Watson*, 204 S.W.3d at 414-15.

Because we have determined that the evidence is both legally and factually sufficient to support Williams's conviction for possession of cocaine as a principal actor, we conclude that any error in submitting a jury instruction on the law of parties was harmless. *See Ladd*, 3 S.W.3d at 564-65. We therefore overrule Williams's third issue.

## CONCLUSION

Given our conclusions that the evidence is legally sufficient to support both of Williams's convictions and that any error in charging the jury on the law of parties was harmless, we affirm the trial court's judgments.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   April 23, 2010

Do Not Publish

13