

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00523-CR
_____

MARC HENZLER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 2
Lubbock County, Texas
Trial Court No. 2012-468,214; Honorable Drue Farmer, Presiding

October 15, 2014

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Marc Henzler, was charged by information with the Class B misdemeanor offense of terroristic threat.[1]  The original information alleged Appellant "on or about 22nd day of October, A.D. 2011, did then and there threaten to commit an offense involving violence to a person, namely aggravated assault or murder, with intent to place [the victim] in fear of imminent serious bodily injury . . . ."  Although the

---

[1] TEX. PENAL CODE ANN. § 22.07(a)(2) (West 2011).  A Class B misdemeanor is punishable by confinement in jail for a term not to exceed 180 days, a fine not to exceed $2,000, or by both such confinement and fine.  *Id.* at § 12.22.

probable cause affidavit in support of this charge included all the facts needed to allege a Class A misdemeanor offense of terroristic threat involving family violence, no mention was made of family violence.[2] The State later amended the complaint, but it still alleged a Class B offense.[3] At no time did the State provide Appellant written notice that it intended to seek an affirmative finding of family violence.

After Appellant was convicted by a jury, the court assessed his sentence at confinement in the Lubbock County Jail for a term of 150 days, suspended for twelve months, and a fine of $1,000. The State orally requested an affirmative finding of family violence. After some discussion between the trial court, counsel for the State and counsel for Appellant concerning the court's authority to enter such a finding in the absence of notice of intent to seek such an affirmative finding, the trial court orally pronounced, "[t]hen I hereby find a finding of family violence based on the dating relationship between the complaining witness and [Appellant] in this case and also order an additional $100 to be assessed as court costs as required by law." When signed and entered, the judgment contained the statement "the Court makes an affirmative finding of fact that the offense involved Family Violence, as defined by Section 71.004 of the Texas Family Code."

On appeal, Appellant contends the trial court erred by (1) entering an affirmative finding of family violence instead of submitting the issue to the jury, (2) misclassifying

---

[2] Attached to the probable cause affidavit was a police report that identified the victim as Appellant's ex-girlfriend. The report further stated the victim and Appellant "were involved in a date (sic) relationship but have been broken up for some time." A charge of terroristic threat can be a Class A misdemeanor if it "is committed against a member of the person's family or household or otherwise constitutes family violence . . . ." TEX. PENAL CODE ANN. § 22.07(c) (West 2011).

[3] The amended complaint changed the threatened offense from "aggravated assault or murder" to simply "assault."

the offense as a Class B misdemeanor, when it was a Class A misdemeanor, (3) failing to require the State to give proper notice of its intent to seek an affirmative finding of family violence and (4) admitting evidence of an extraneous offense. Appellant also contends (5) he was unfairly prejudiced by the admission of extraneous offense evidence and (6) the evidence is legally insufficient to find he intended to place the victim in fear of imminent serious bodily injury. We affirm.

BACKGROUND

Appellant and Emma Knowles were in a long-term friendship relationship, starting in grade school in the late 1990s. In 2009, when both were in their late teens, that relationship became a dating relationship, eventually involving intimate sexual relations. They dated on and off until the summer of 2011, when Knowles decided to end the relationship.[4] On October 22, 2011, Appellant and Knowles began communicating through text messages and phone calls. Appellant was in Abilene, while Knowles was at a social function in Lubbock. As later explained by her testimony, Knowles falsely told Appellant that she was intimately involved with other men because she was trying to end her relationship with Appellant and had hoped that information would repulse him. Testimony revealed the following series of text messages:

Knowles: You don't want to be with me, you don't want to know what I'm always up to.

Appellant: ? Lol the problem is I want to be with u and u don't want to be with me.

Knowles: I just can't stand the shit I've done to you. One day you'll know what a piece of shit I am.

---

[4] According to evidence offered by Appellant, he continued to have a dating relationship with Knowles up until the incident in question.

3

Appellant: If I know everything it's fine but if there is other crap u need to tell me!

Knowles: You don't even know.

Appellant: U go outside and call me if not I will fucking kill u!!!!!!

Knowles: Bring it. I am outside.

Knowles: I couldn't tell you. I need to be honest though. You don't want to be with me. I'm a whore.

Appellant: I'm gunna kill you!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!

Appellant: I'm going to u stupid fucking bitch!!!

Appellant: I'm gunna kill u u better have the cops there Sunday cause I'm kicking in ur fucking door!

Appellant: Naw fuck it I'll be there tonight o hope that faggot is there

Appellant: Be there by 4 ur door is getting kicked in and I'm gunna choke u until ur not breathing

Knowles testified that she was particularly alarmed by the "choke u until ur not breathing" text because Appellant had choked her once before. Other texts were exchanged, including the following:

Appellant: U know wat I got played!!!! Lol but when I do c u I'm gunna embarrass the shit out of you!!!

The following day Knowles's father reported the threatening messages to the police. Upon investigation, Appellant admitted to the police that he "blew up" after being told by Knowles that she was involved with other men and that he was "just mad" and was "speaking out of anger." On January 3, 2012, Appellant was charged by Complaint and Information with the offense of terroristic threat. On October 30, 2012, a Lubbock County jury returned a verdict of guilty, and the trial court assessed sentence at 150 days in county jail and a fine of $1,000, with the period of confinement suspended in

4

favor of twelve months of community supervision. As previously stated, the judgment contained an "affirmative finding of fact that the offense involved Family Violence, as defined by Section 71.004 of the Texas Family Code." This appeal followed.

ANALYSIS

ISSUES ONE, TWO & THREE—AFFIRMATIVE FINDING OF FAMILY VIOLENCE

Article 42.013 of the Texas Code of Criminal Procedure mandates that, in the trial of an offense under Title 5 of the Penal Code (which includes the offense of terroristic threat as alleged in the information in this case), if the court determines that the offense involved family violence, as defined by Section 71.004 of the Texas Family Code, "the court *shall* make an affirmative finding in the judgment of the case." TEX. CODE CRIM. PROC. ANN. art. 42.013 (West 2008) (emphasis added). "Family violence" includes "dating violence." TEX. FAM. CODE ANN. § 71.004(3) (West 2014). "Dating violence" includes an act that is "committed against a victim . . . with whom the actor has or has had a dating relationship: and that is "a threat that reasonably places the victim in fear of imminent physical harm, bodily injury, assault, or sexual assault." *Id.* at § 71.0021(a).

Appellant's first three issues center around the propriety of the trial court's affirmative finding that the offense in question involved family violence for purposes of article 42.013. Before addressing those issues, we must first address the issue of error preservation.[5] Generally, to preserve a complaint for appellate review, a party must

---

[5] "[I]ssues of error preservation are systemic in first-tier review courts;" such issues "must be reviewed by the court of appeals regardless of whether the issue is raised by the parties." *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012) (quoting *Menefee v. State*, 287 S.W.3d 9, 18 (Tex. Crim. App. 2009).

5

make a timely, specific request, objection, or motion in the trial court and obtain an adverse ruling from the court.  TEX. R. APP. P. 33.1(a); *Lovill v. State,* 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009).   Here, Appellant raises questions concerning family violence for the first time on appeal.  He did not object to the failure to submit the issue of family violence to the jury, nor did he object to the lack of notice of the State's intent to seek an affirmative finding of family violence or to the actual entry of such a finding.  Accordingly, these complaints were not preserved for appellate review.

Even if Appellant had preserved error, his arguments would still fail.  As to issue one, the Court of Criminal Appeals has previously held that a trial court does not err in failing to submit the question of family violence to a jury under article 42.013, because the Legislature has clearly assigned that responsibility to the trial court.  *Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006).[6]   Furthermore, this Court has recently held that article 42.013 does not require prior notice of intent to secure an affirmative finding of family violence.  *Suiters v. State*, No. 07-13-00352-CR, 2012 Tex. App. LEXIS 10171, at *2 (Tex. App.—Amarillo Sept. 10, 2014, no pet. h.) (mem. op., not designated for publication) (relying on *Thomas v. State*, 150 S.W.3d 887, 888-89 (Tex. App.—Dallas 2004, pet. ref'd).  Finally, where more than one offense is implicated by the facts of a given case, the State has the sole authority to determine what charges it chooses to bring and Appellant should not be heard to complain that in this case the State chose to file the Class B misdemeanor offense, rather than the Class A misdemeanor offense. Issues one, two and three are overruled.

---

[6] Appellant asks this Court to carve out an exception to *Butler* by contending that ruling fails to address the issue of enhanced punishment based on the federal prohibition on possessing a firearm that automatically arises from a finding of family violence.  *See* 18 U.S.C.A. § 922 (g)(9) (2000) (making it unlawful for any person convicted of an offense involving family violence to ship or transport in interstate or foreign commerce, or possess in of affecting commerce, any firearm or ammunition).  Given our ruling on the failure to preserve error, we need not address that issue.

By his fourth issue, Appellant contends the trial court erred by admitting evidence of a prior unadjudicated bad act concerning whether he had previously choked Knowles, and by his fifth issue he contends he was unfairly prejudiced by the admission of that evidence. The State contends the evidence was admissible pursuant to Rule 404(b) of the Texas Rules of Evidence for the purpose of proving an essential element of the offense, to-wit: that Appellant threatened the victim with the intent of placing her in fear of imminent serious bodily injury. The State further contends that, pursuant to Rule 403 of the Texas Rules of Evidence, the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice.

As a basic tenet of criminal law an accused is entitled to be tried on the charges contained in the State's pleading and not on a collateral bad act, or for being a criminal in general. *Robbins v. State*, 88 S.W.3d 256, 262-63 (Tex. Crim. App. 2002). Accordingly, evidence of prior bad acts is not admissible for the general purpose of showing the accused acted in conformity therewith, *id.* at 256, 259; however, it may be admissible for the purpose of showing intent. *See* TEX. R. EVID. 404(b). Here, the State was required to prove Appellant acted with the specific intent of placing Knowles in fear of imminent serious bodily injury. The fact that Appellant may have previously choked the victim is certainly relevant to the question of whether he made the "choke u" statement with the intent of placing her in fear of imminent bodily injury. Accordingly, such evidence was admissible under Rule 404(b).

However, even though such evidence is admissible under Rule 404(b), evidence of other crimes, wrongs or acts may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Whether evidence of an extraneous offense has relevance apart from its tendency to show character conformity, as required by Rule 404(b), is a question for the trial court. Thus, the admissibility of such evidence is a matter left to the sound discretion of the trial court, subject to review under an abuse of discretion standard. In applying that standard, we consider whether the trial court acted without reference to any guiding rules or principles or whether the trial court acted arbitrarily or unreasonably in admitting the evidence. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Id.* at 391. A trial court's decision to admit extraneous offense evidence is generally within that zone if the evidence shows that (1) the extraneous offense is relevant to a material, non-character conformity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury.

Evidence concerning the prior choking incident was probative in helping to explain why the specific threat to choke Knowles caused her to actually fear imminent bodily injury, as well as inferentially show that Appellant made those threats with the intent to cause that reaction. Given the fact that the evidence was presented to the jury with a limiting instruction, as well as the fact that the *Court's Charge* contained a similar limiting instruction, we cannot say the trial court acted without reference to any guiding rules or principles or that it acted in an arbitrary and capricious manner when it decided to admit that evidence. Issues four and five are overruled.

ISSUE SIX—LEGAL SUFFICIENCY OF THE EVIDENCE

By his sixth issue, Appellant contends the evidence is legally insufficient to support his conviction for terroristic threat. We disagree.

STANDARD OF REVIEW

The standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this Court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). We must give deference to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

As relevant to this case, a person commits the offense of terroristic threat if he threatens to commit an offense involving violence to any person with intent to place any person in fear of imminent serious bodily injury. TEX. PENAL CODE ANN. § 22.07(a)(2) (West 2011). Here, it is undisputed that Appellant expressly threatened to commit an offense involving violence to another person, to-wit: he threatened to choke and kill Knowles. The issue in dispute was whether he did so with the requisite intent to place her in fear of imminent serious bodily injury. A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). Given the previous history between the parties and the responsibility of the trier of fact to weigh the evidence and draw reasonable inferences from that evidence, we cannot say a rational factfinder would not have found the essential elements of the crime beyond a reasonable doubt. Appellant's sixth issue is overruled.

CONCLUSION

Having overruled each of Appellant's six issues, we affirm the judgment of the trial court.

Patrick A. Pirtle<br>
Justice

Do not publish.